# MOTOR VEHICLE LEASE AGREEMENT
## (CLOSED END) NEW YORK

**CULA** — The Credit Union Lease  **HudsonValley** FEDERAL CREDIT UNION

This lease agreement ("Lease") is between the lessor listed at the bottom of this side and the lessee listed immediately below. As used in this Lease the words "I", "me," or "my" refer to the lessee, "you" or "your" refer to the lessor and "we," "our" or "us" refer to both the lessor and lessee. I understand that the consumer lease disclosures made in this Lease are also made on behalf of HUDSON VALLEY FEDERAL CREDIT UNION and on behalf of Credit Union Leasing of America to whom you intend to assign this Lease.

Lessee Name(s): GIA SESSA   Address(es): 61 OAK ST APT C BREWSTER NY 10509-6428

**1. AGREEMENT TO LEASE.** I will lease the vehicle described below under this Lease ("Vehicle"). Our obligations begin when we have signed this Lease. If the Vehicle is not delivered to me when we sign, you will use your best efforts to deliver it as soon as practicable. The Lease Term continues until the expiration of the number of months set forth in Paragraph 2.G.(8) from execution of the Lease ("Lease Term").

| New or Used | Year | Make | Model | Color | Vehicle Identification Number | Odometer | License Number |
|---|---|---|---|---|---|---|---|
| NEW | 2019 | SUBARU | FORESTER | GY | JF2SKAECXKH406756 | 127 | JDX1242 |

## 2. FEDERAL CONSUMER LEASING ACT DISCLOSURES.

**A. Amount Due at Lease Signing or Delivery** (Itemized below)*
$ 4000.00

**B. Monthly Payments.** I will make 36 Monthly Payments under this Lease. My first Monthly Payment of $ 237.75 is due when the Lease is signed. The second and subsequent Monthly Payments in the same amount** will be due commencing 02 DEC 2018 and on the same day of each succeeding month. The total of my Monthly Payment for the whole Lease Term is $ 8559.00 **

**C. Other Charges** (not part of my Monthly Payment)
Turn-in Fee (if I do not purchase the Vehicle) $ 400.00
N/A  N/A
Total $ 400.00

**D. Total of Payments** ** (The amount I will have paid to you by the end of the Lease)
$ 12721.25

### *Itemization of Amount Due at Lease Signing or Delivery

**E. Amount Due at Lease Signing or Delivery:**
(1) Capitalized Cost Reduction  $ 2528.40
(2) Tax on Capitalized Cost Reduction  211.75
(3) First Monthly Payment  237.75
(4) Current Year Registration/License Fees/Title Fees  211.50
(5) OTHER UPF FEES  810.60
Total  $ 4000.00

**F. How the Amount Due at Lease Signing or Delivery will be paid:**
(1) Net Trade-in Allowance  $ 0.00
(2) Rebates and Noncash Credits  N/A
(3) Amounts to Be Paid in Cash  4000.00
(4) Total  $ 4000.00

### G. My Monthly Payment is Determined as Shown Below:

(1) **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 662.00 ) and any items I pay for over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ............... $ 28457.00
  If I want an itemization of this amount, I may check this box. ☐
(2) **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, Rebate, Noncash Credit or Cash I pay that reduces the Gross Capitalized Cost ............... − 2528.40
(3) **Adjusted Capitalized Cost.** The amount used in calculating my Base Monthly Payment ............... = 25928.60
(4) **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating my Base Monthly Payment ............... − 19444.07
(5) **Depreciation and Any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term as part of the Base Monthly Payments ............... = 6484.53
(6) **Rent Charge.** The amount charged in the Base Monthly Payments in addition to the Depreciation and any Amortized Amounts ............... + 2074.47
(7) **Total of Base Monthly Payments.** The Depreciation and Any Amortized Amounts plus the rent charges ............... = 8559.00
(8) **Lease Payments.** The number of payments in my Lease ............... ÷ 36
(9) **Base Monthly Payment** ............... = 237.75
(10) **Monthly Sales/Use Tax** ............... + N/A **
(11) N/A ............... + N/A
(12) **Total Monthly Lease Payment** ("Monthly Payment") ............... = $ 237.75 **

**H. Early Termination.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater the charge is likely to be.

**I. Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of ............
☐ 15,000 miles ☐ 10,000 miles per year at the rate of 15¢ per mile if the Residual Value is less than $20,000; 20¢ per mile if the Residual Value is between $20,000 and $25,000; 25¢ per mile if the Residual Value exceeds $25,000.

**J. Purchase Option at End of Lease Term.** I have the option to purchase the Vehicle AS-IS, WHERE IS, at the end of the Lease Term for the Residual Value set forth in Section 2.G.4 which is the Lease Balance as described in Paragraph 5 assuming all payments are made on the exact scheduled date, plus a Purchase Option Fee of $325 and applicable official fees and taxes.

**K. Other Important Terms.** See both sides of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and Default charges, insurance, and any security interest, if applicable.

**These amounts are estimates because they are based on current tax rates.

### FURTHER FINANCIAL DISCLOSURES

**3. ESTIMATED OFFICIAL FEES AND TAXES.** You estimate the total of official fees and taxes I will have to pay during the Lease Term, whether included in the Monthly Payment or assessed otherwise, is $ 69.25 . My tax and fees obligations are described in Paragraph 11. THE AMOUNT INDICATED ON THIS SALES CONTRACT OR LEASE AGREEMENT FOR REGISTRATION AND TITLE FEES IS AN ESTIMATE. IN SOME INSTANCES, IT MAY EXCEED THE ACTUAL FEES DUE THE COMMISSIONER OF MOTOR VEHICLES. THE DEALER WILL AUTOMATICALLY, AND WITHIN SIXTY DAYS OF SECURING SUCH REGISTRATION AND TITLE, REFUND ANY AMOUNT OVERPAID FOR SUCH FEES.     LESSEE(S) INITIALS [   ]

**4. SERVICE CONTRACT.** While I have no obligation to do so, I understand I may purchase from you a contract under which I will have the coverage of Vehicle related expenses described in a separate service contract to be paid by the administrator listed in that contract on behalf of the obligor. I understand that you may receive a portion of the contract price.
The term of this protection will be N/A months from the date this Lease is signed or until the Vehicle has been driven N/A miles, whichever occurs first.
Service Contract Administrator N/A
Choice of Payment:
I choose to purchase the contract for its cash price of $ N/A .
    LESSEE(S) INITIALS [   ]
I choose to purchase the contract and pay for its cash price of $ N/A together with rent charges during the Lease Term as part of the Monthly Payments.
    LESSEE(S) INITIALS [   ]

**5. LEASE BALANCE CALCULATION.** In Paragraphs 2.J, 5, 14, 15 and 17 the term "Lease Balance" is used to describe a component of my purchase option right and my liability for scheduled or early termination. For these purposes each Monthly Payment will be allocated when you receive it first to taxes, then to Rent Charges which have accrued on the basis of a 365-day year, payments in advance, since the prior Monthly Payment and on finally to reduce the outstanding Adjusted Capitalized Cost to calculate the then current Lease Balance, except that advance payments will be returned to the extent that the total advance payments made exceeds three (3) Monthly Payments. The Adjusted Capitalized Cost as of the date you and I sign the Lease and before application of the first Monthly Payment is shown in Paragraph 2.G.(3). The Rent Charge set forth in Paragraph 2.G.(6) is based on each Monthly Payment being made exactly on its due date and computed using the actuarial method. The Lease Balance at any time equals the then outstanding Adjusted Capitalized Cost plus any accrued but unpaid rent based on the dates payments are actually made. The Residual Value shown in Paragraph 2.G.(4) is what the Lease Balance will be at the end of the Lease Term if Monthly Payments are made exactly on their due dates. These allocations will affect my purchase option price and my liability if this Lease is terminated early other than as provided in Paragraph 17 and may also affect my scheduled termination liability. The Lease Balance will increase if you receive my Monthly Payments after the due date because a lesser portion of the Monthly Payments will go to reduce the Adjusted Capitalized Cost and will decrease if I pay my Monthly Payments early, except that advance payments will be returned to the extent that the total advance payments made exceeds three (3) Monthly Payments.

**6. VEHICLE WARRANTIES AND DISCLAIMERS.** I understand that unless otherwise indicated below the Vehicle is subject to the manufacturer's new car warranty and I have those warranty rights. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below. **I AM LEASING THE VEHICLE "AS-IS" AND ACCORDINGLY YOU MAKE NO EXPRESS WARRANTIES AND SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES AS TO THE VEHICLE INCLUDING THOSE OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. IF I HAVE PROBLEMS WITH THE VEHICLE, YOU WILL NOT BE RESPONSIBLE FOR THE REPAIRS, NOR WILL MY LEASE OBLIGATIONS BE AFFECTED.**

LESSEE(S) INITIALS [   ]
☐ The Vehicle is subject to the following express warranty:
☐ New car warranty not applicable.
☐ The Vehicle is subject to a limited warranty under the New York Lemon Law.

**DISCLOSURES REQUIRED BY NEW YORK LAW**
Capitalized cost $ 25928.60 . The sum of the adjusted capitalized cost and any capitalized cost reduction. The capitalized cost and the amount of the rental payment may be negotiable.
Adjusted capitalized cost $ 28457.00 . The amount which is capitalized in connection with the Lease and is used in determining my periodic payment. This amount will be used in determining the legal limit of my early termination liability. The 'adjusted capitalized cost' may be used to compare the early provisions of competing lessors.
Estimated residual value $ 19444.07

The execution of this Lease below evidences your and my acceptance of the Lease. Your execution also has the effect of assigning to Credit Union Leasing of America this Lease and your interest in the Vehicle.
IN THE FOLLOWING NOTICES "YOU" REFERS TO LESSEE.
NOTICE TO THE LESSEE: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this agreement when you sign it.
BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETELY FILLED IN COPY OF THIS LEASE.

**MOTOR VEHICLE LEASE AGREEMENT**

LESSOR NAME: CURRY HYUNDAI SUBARU    Dated _____
(By) _____  (Title) _____    LESSEE _____
Address: _____    LESSEE _____

EXHIBIT 1

**7. LATE CHARGES, RETURNED INSTRUMENT CHARGES AND LATE RETURN.** If all or any portion of a Monthly Payment is not received by you within 10 days of its due date, I will pay you a late charge equal to the lesser of 5% of the payment or $25 or such lesser amount as may be set by law. If for any reason I do not return the Vehicle to you at the end of the Lease Term, I will pay you an additional Monthly Payment for each month or portion of a month the Vehicle is retained. I acknowledge, however, that I have no right to retain the Vehicle after the end of the Lease Term and that any retention of the Vehicle after the end of the Lease Term is a Default under this Lease.

If any check or electronic payment is dishonored or returned unpaid, I may be charged $20.

**8. INSURANCE.** I will provide the following insurance coverage under which I am a named insured during the Lease Term and until I return the Vehicle to you:

A. Designating you as Loss Payee with respect to the following coverages:
   - Fire, theft and comprehensive insurance with a maximum deductible of **$1,500**, and
   - Collision insurance with a maximum deductible of **$1,500**, and

B. Designating you as an Additional Insured with respect to the following coverages:
   - Minimum public liability insurance for bodily injury or death to any one person in the amount of **$100,000** and for any one accident in the amount of **$300,000**, and
   - Minimum property damage insurance of **$50,000**.

The insurance policy I obtain must be approved by you and must state you will be given at least 10 days advance written notice of any cancellation, or change in coverage. I will furnish you with whatever written proof of the required coverage you request. I appoint you my attorney-in-fact to negotiate and settle, and endorse all checks for payments of, any amounts due under the insurance I am carrying under this Lease.

**NEITHER PHYSICAL DAMAGE NOR LIABILITY INSURANCE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

**9. USE OF VEHICLE.** I am responsible for all expenses (for example, gasoline, oil, repairs and parking tickets) incurred in connection with the Vehicle. I will not use nor permit use of the Vehicle:

A. For any unlawful purpose or in violation of any law;
B. In a manner subjecting it to abnormal depreciation or that would cause the insurance on the Vehicle to be suspended or canceled;
C. By a person not having a valid driver's license or one who, for insurance purposes, is deemed an assigned risk or one who does not exercise care in its operation;
D. For the transportation of goods or person(s) for hire, including, but not limited to, ridesharing, livery, ride-sharing, transportation network company services, and paid carpooling, whether as an employee or an independent contractor or any other status;
E. Outside the 48 contiguous United States;
F. Outside the state where I resale when I sign this Lease for a period exceeding 30 days; or

**10. LIENS AND INDEMNITY.** I will not permit the Vehicle or this Lease to become subject to any lien or encumbrance except one you create. I also will indemnify you against any liability, loss or expense arising from the operation, condition, or ownership of the Vehicle. I understand that under this indemnity I am obligated to pay your court costs and attorneys' fees in connection with any action against which I have indemnified you. I also understand that this indemnity covers any claims made against you under the doctrine of strict liability.

**11. OFFICIAL FEES AND TAXES.** I will pay for and maintain current registration of the Vehicle until I return it to you and pay when due or reimburse you for any other official fees and all taxes, excluding your net income taxes, imposed by any governmental authority in connection with this Lease or the Vehicle. My obligations include property and other taxes assessed during the Lease Term but not payable until after the Lease ends.

**12. VEHICLE MAINTENANCE AND MODIFICATIONS AND STANDARD OF WEAR AND USE.** Until I return the Vehicle to you, I will have the Vehicle serviced according to the manufacturer's recommendations, maintain the Vehicle in good running order and condition and have all necessary repairs made. I will add any legally required emission control systems or safety equipment to the Vehicle. If you request, you may inspect the Vehicle at any reasonable time. Unless I obtain your written consent beforehand, I will not make any changes to the Vehicle (such as adding or removing parts or painting the Vehicle) which would decrease its value, limit its use or void the manufacturer's warranty.

When I return the Vehicle, it will be in good operating order and appearance with all manufacturer recommended servicing having been performed and will be saleable at wholesale without deductions for condition. Upon early termination I agree to pay any amounts you spend to put the Vehicle in this condition. At the end of the Lease Term I agree to pay any amounts that it would take, based upon the good faith estimate of a qualified repair person or facility you obtain, to put the Vehicle in this condition. I recognize that the most common items of repair or replacement for which I might be liable if I failed to maintain the Vehicle properly are any of the following which will detract from the Vehicle's wholesale value:

Repair of:

A. Inoperative mechanical parts including power accessories;
B. Dents, scratches, chips or rusted areas or series of these on wheels, rims or the body; including the bed of a truck;
C. Mismatched paint or any mark left by special identification;
D. Cracks, scratches, pits or chips in the windshield, broken windows or inoperative window mechanisms or broken headlight lenses or sealed beams;
E. Bumper dents or scratches through the chrome or bumpers;
F. Broken grilles or dents in the grilles;
G. Dents on other trim parts, including headlight and taillight bezels; and
H. Seats, seat belts, headlining, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or burned.

Replacement of:

A. Any tire not part of a matching set of 5 tires (or 4 with emergency "doughnut" spare) or tires with less than 1/8 inch of tread remaining at the shallowest point; and
B. Missing parts, accessories and adornments, including bumpers, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components and spare tire.

I also recognize that if the Vehicle has suffered frame, including unibody, damage or substantial other damage or had an inoperative or tampered odometer, even though the damage or odometer may have been repaired, or is otherwise sold with a "disclosure," the value of the Vehicle will be substantially less than the value of an identical vehicle which has not had frame, including unibody, damage or suffered substantial other damage or had an inoperative or tampered odometer, or is not otherwise sold with a "disclosure." I understand that my obligations include this difference.

I recognize that I have agreed to waive a portion of my excess wear and tear liability under this Paragraph 12 for up to a maximum of $1,000. However, I realize your waiver will not include charges related to mechanical issues, replacement of parts not approved by the vehicle manufacturer, ride height and suspension modifications, tinting and adhesive items such as bumper stickers, low quality body and paint repairs, supplemental restraint systems including airbags, tampered odometer and other deceptive and illegal acts, burns, acts of nature, theft or vandalism, missing interior and/or exterior parts, frame and/or unibody damage causing diminished value and any single event that exceeds the maximum of $1,000. Lessee should consider their primary insurance for single event damage that exceeds the $1,000 maximum and for any other damage not covered by the waiver.

**13. LIMITS ON MY ASSIGNMENT. I UNDERSTAND THAT I HAVE NO RIGHT TO ASSIGN ANY INTEREST IN THE LEASE OR THE VEHICLE OR TO SUBLET OR LEND THE VEHICLE TO ANYONE WITHOUT YOUR WRITTEN CONSENT.**

## ENDING THE LEASE

**14. SCHEDULED TERMINATION LIABILITY.** I have no right to extend this Lease and if it has not been terminated early, this Lease terminates at the expiration of the Lease Term. Unless I choose to purchase the Vehicle, if I have that option, I agree that upon the expiration of the Lease I will return the Vehicle to a place you will specify. I understand that if I do not return the Vehicle then the Lease will be in Default, but will be extended in full force and effect until the Vehicle is returned or the Lease otherwise terminated in accordance with its terms. Before surrender of the Vehicle I will allow the Vehicle to be inspected by your inspection company and when I surrender the Vehicle, I will return the "Turn In Receipt and Odometer Disclosure Statement" you have sent me, properly completed. I understand that if I fail to return the Vehicle to the place you specify, I have agreed under Paragraph 18 to reimburse your costs to transport the Vehicle there. I agree that if I do not then purchase the Vehicle if I have that option, my payment liability at lease expiration will be the sum of:

A. A Turn-in Fee of **$400**; plus
B. Any amounts other than Monthly Payments I then owe you, including any charge I may owe you under Paragraph 12; plus
C. Any excess mileage charge described in Paragraph 2.1; plus
D. The amount, if any, by which the Lease Balance as described in Paragraph 5 exceeds the Residual Value; plus
E. Any official fees and taxes imposed in connection with Lease termination (for example, taxes due on a mileage charge under C.).

I realize that some of my end of term liabilities may not be determined until after the Vehicle is surrendered.

**15. FURTHER PURCHASE OPTION INFORMATION.** During the term of the Lease I have the option to purchase the Vehicle for the Lease Balance as described in Paragraph 5, plus a Purchase Option Fee of **$325** and applicable official fees and taxes. The Lease Balance is calculated on a simple interest basis, which means that, all things being equal, late payments will reduce the balance more slowly than on time payments. At the end of the Lease Term, I have the option to purchase the Vehicle for the Residual Value set forth in Section 2.G.4 which is the Lease Balance as described in Paragraph 5 assuming all payments are made on the exact scheduled date, plus a Purchase Option Fee of **$325** and applicable official fees and taxes. Late payments will, all things being equal, cause the end-of-lease purchase option price to be higher than the Residual Value and early payments will, all things being equal, cause the purchase option price to be lower than the Residual Value. My right to purchase the Vehicle is not transferable. I am aware that in order to trade in the Vehicle, I must pay the purchase price. Whether I purchase the Vehicle during or at the end of the Lease the purchase will be on an **"AS IS, WHERE-IS, AND WITH ALL FAULTS"** basis.

**16. VEHICLE ACCIDENT AND DAMAGE, LOSS OR DANGER AND GAP.** I agree to be responsible for the risk of loss, damage, confiscation or destruction of the Vehicle during the lease term and until I return the Vehicle to you. If the Vehicle is in an accident where there is personal injury or damage to somebody else's property or the Vehicle is damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or is stolen or is abandoned or is subject to undue peril, I will notify you of such occurrence or condition as soon as possible and will cooperate with you and my insurance company in resolving the matter. If the Vehicle is damaged beyond repair or is lost or stolen and not recovered, the Vehicle is a "Total Loss" and the Lease terminates. I realize you have no obligation to replace the Vehicle. If the Total Loss is a result of my intentional, fraudulent or criminal acts, I will owe the early termination liability set forth in Paragraph 17. If the Total Loss is not a result of my intentional, fraudulent or criminal acts, I will owe the sum of the deductible under my policy, any past due amounts under the lease, including lease payments, that accrued prior to the date of the Total Loss and any other deductions made by my insurance company when it honors your claim based on the condition of the Vehicle prior to the Total Loss including deductions made for excessive mileage or condition which shall be considered charges for failure to maintain the Vehicle in good operating order and condition and not as charges for the Total Loss, and applicable taxes.

**17. EARLY TERMINATION AND REALIZED VALUE.** At any time I may terminate this Lease by returning the Vehicle to a place you will specify and fulfilling my early termination obligations. Before surrender if you ask me I will allow the Vehicle to be inspected by your inspection company and when I surrender the Vehicle I will return the "Turn In Receipt and Odometer Disclosure Statement" you have sent me, properly completed. I agree that except as specified in Paragraphs 15 and 16 my payment liability upon early termination will be the sum of:

(a) Any amounts other than Monthly Payments I then owe you, including any charge I may owe you under Paragraph 12; plus
(b) If the Lease Balance described in Paragraph 5 (the then outstanding adjusted capitalized cost) plus any accrued but unpaid rent exceeds the "realized value" described below, the difference between that sum and the realized value; plus
(c) Any official fees and taxes imposed in connection with the Lease termination (for example, taxes due on a deficiency balance under (b)).

For purposes of calculation of my early termination liability the realized value will be determined in one of the following ways:

(d) By a written agreement between you and me establishing the realized value, if it is signed within 10 business days after termination of the Lease.
(e) By a professional appraisal of the wholesale value of the Vehicle obtained at my expense within 10 business days after early termination of the Lease, from an independent appraiser agreed to by you and me. This appraisal amount shall be final and binding.
(f) If the realized value is not determined within 10 business days after termination of the Lease as provided in paragraph (d) or (e), above, then the realized value will be the greater of the following (i) the price you receive for the commercially reasonable disposition of the Vehicle, after subtracting all actual and reasonable expenses you incur with the disposition of the Vehicle; or (ii) the highest bona fide offer you receive for the commercially reasonable disposition of the Vehicle.

**18. DEFAULT AND REMEDIES.** If any information in my lease application or any information provided you by a guarantor of my lease obligations is false or misleading or if I fail to make a Monthly Payment when due or if I fail to maintain the insurance required under Paragraph 8 or otherwise fail to meet my obligations under or breach this Lease or if I or any guarantor of my lease obligations becomes insolvent or subject to a bankruptcy proceeding or dies, you may treat this Lease as being in default ("Default").

In the event of Default, you may do any or all of the following without giving me advance notice except as otherwise provided by applicable law: A. take any reasonable measures designed to either correct the Default or to save yourself from loss, such as purchasing insurance to protect your interest, if I fail to fulfill my obligations under Paragraph 8, in which case I will reimburse you for all costs and expenses incurred; B. terminate the Lease and my rights to possess and use the Vehicle; C. take possession of the Vehicle by any method or manner permitted by law if I fail to return it to you; D. determine my termination liability as provided in Paragraph 17 in which case I will return the Vehicle to a place you will specify, and I will pay you this amount; E. recover from me interest at the rate of 18% per annum or at such lesser rate as may be provided for under applicable law on all expenses incurred by you and on all obligations which I owe you after termination; and F. pursue any other remedy permitted by law. I have the right, if my default consists solely of failure to make a monthly lease payment on time and I have not previously failed to make a monthly lease payment on time, to cure my default and reinstate the Lease. To reinstate the Lease I must pay all then due amounts, your actual and reasonable costs of repossession, storage, pickup and redelivery and a $10 fee. If I qualify, you will give me notice of my reinstatement rights with directions as to how I must exercise the right. The right will be available for 25 days after the notice is sent. As indicated, the reinstatement right is only available for payment default and only if I have not previously been afforded the right to reinstate a payment default.

I also agree in the event of Default to be liable for all your collection, repossession, storage and legal costs, to the extent permitted by law.

## OTHER INFORMATION

**19. YOUR ASSIGNMENT.** You may assign an interest in this Lease or the Vehicle and if I receive notice of the assignment, I will pay any assigned amounts as you have directed. I agree that unless otherwise provided by applicable law the rights of your assignee will be free of any claims I have against you and further that no assignee will be responsible for the performance of any of your duties under this Lease unless the assignee expressly assumes the duties. I also understand that upon the assignment of the Lease to any assignee for other than collateral purposes, the assignee will be entitled to all your rights as lessor including the right to all payments due under this Lease and the right to be named as the Loss Payee and Additional Insured under the insurance required in Paragraph 8.

**20. GENERAL.** We further agree that:
A. If more than one lessee signs this Lease, all lessees will be jointly and severally liable. Additionally, you can waive or delay enforcement of your rights as to one lessee without affecting your rights as to any other lessees, and you can release any lessee from his or her obligations without releasing any other lessees from their obligations.
B. Your waiver or delay in requiring me to perform any of my obligations or in enforcing your rights will not affect your ability to require me to perform the same obligations or to enforce your rights afterwards.

C. Notices under this Lease must be in writing addressed to the appropriate one of us at the address shown on the other side of this Lease and must be mailed by U.S. Mail, first class postage prepaid, and we will each notify the other of a change in address;
D. Any changes to this Lease must be in writing and signed by the party to be charged;
E. If, despite our intent, a court finds that this Lease is other than a true lease, you will be deemed to have a security interest in the Vehicle;
F. This Lease will be interpreted according to the laws of the state of New York and is binding on each of our heirs, personal representatives, successors and assignees.
G. You have not given me any information on which I am relying regarding the tax consequences of this Lease, and
H. I agree that you may (without prior notice and when permitted by law) set off any debt I owe you against funds that I may have in a deposit account with you over which I have withdrawal power. This right of set-off does not apply to any account which (i) is an IRA or a tax-deferred retirement account or (ii) under which my withdrawal rights are in a representative capacity.