## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIA SESSA, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>LINEAR MOTORS, LLC d/b/a CURRY HYUNDAI SUBARU; HUDSON VALLEY FEDERAL CREDIT UNION; CREDIT UNION LEASING OF AMERICA; AND TRANS UNION, LLC,<br><br>                Defendants. | No. 7:19-cv-09914-KMK<br><br>**TRANS UNION LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Michael O'Neil (Pro Hac Vice)
Albert E. Hartmann (Pro Hac Vice)
Maxwell J. Eichenberger (Pro Hac Vice)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
 T: 12.207.1000
 F: 12.207.6400
michael.oneil@reedsmith.com
ahartmann@reedsmith.com
meichenberger@reedsmith.com


Erika Kweon (SBN 4991774)
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
 T: 12.521.5400
 F: 12.521.5450
ekweon@reedsmith.com


*Counsel for Defendant Trans Union LLC*

# TABLE OF CONTENTS

Page

I.    BACKGROUND ...................................................................................2

      A.   The Relevant FCRA Provisions...................................................... 2

      B.   The Undisputed Material Facts....................................................... 3

      C.   Procedural Background.................................................................. 7

II.   LEGAL STANDARD UNDER RULE 56 ............................................7

III.  ARGUMENT ......................................................................................8

      A.   Plaintiff Has Not Alleged An Inaccuracy Actionable Under § 168le(b)
           Because Trans Union Is Not Obligated To Resolve Legal Challenges To
           The Validity Of Her Balloon Payment Obligation. ................................. 8

           1.   Section 1681e(b) does not require Trans Union to resolve
                Plaintiff's contract dispute with Hudson Valley...................................... 10

           2.   Section 1681e(b) does not require Trans Union to determine if
                Plaintiff's lease violated federal laws. ...................................... 12

      B.   Trans Union Cannot Be Liable Under § 1681e(b) Because It Reasonably
           Relied On Hudson Valley To Report Accurate Information. ............................ 13

           1.   Trans Union used reasonable procedures to ensure it could rely on
                Hudson Valley to report accurate information................................... 15

           2.   Trans Union had no notice that the Balloon Payment Information
                might be inaccurate because Plaintiff failed to dispute the
                information..................................................................... 17

           3.   Hudson Valley's reporting of the Balloon Payment Information
                was facially accurate. .......................................................... 18

      C.   Plaintiff's Claim That Trans Union Willfully Violated § 1681e(b) Fails As
           A Matter Of Law.............................................................................. 19

           1.   Trans Union's actions were objectively reasonable because they
                are supported by the guidance from federal appellate courts. .................. 19

           2.   Plaintiff's "evidence" of Trans Union's willfulness fails......................... 21

D.      Plaintiff's Claim For Negligent Violation Of § 1681e(b) Fails Because She Has Suffered No Harm From The Reporting Of The Balloon Payment Information To A Single Entity. ........................................................................... 22

IV.      CONCLUSION .................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................8

*Baldeosingh v. Trans Union*,
No. 8:20-cv-925-WFJ-JSS, 2021 WL 12150001 (Mar. 31, 2021, M.D. Fl.).........................12

*Barsky v. Experian Info. Sols., Inc*,
No. 4:15 CV 1017 CDP, 2016 WL 4538526 (E.D. Mo. Aug. 30, 2016)................................13

*Batterman v. BR Carroll Glenridge, LLC*,
829 F. App'x 478 (11th Cir. 2020) (per curiam) ............................................9, 11

*Bhutta v. Vanchoc Transp. Inc.*,
407 F. Supp. 3d 152 (E.D.N.Y. 2018) ...................................................................19

*Burns v. Bank of America*,
655 F. Supp. 2d 240 (S.D.N.Y. 2008)....................................................................22

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ........................................................................9, 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................7

*Chijioke-Uche v. Equifax Info. Servs.*,
LLC, No. CV 19-4006, 2021 WL 2005499 (E.D. Pa. May 20, 2021)....................................12

*CILP Assocs., L.P. v. PricewaterhouseCoopers LLP*,
735 F.3d 114 (2d Cir. 2013)................................................................................8

*Cohen v. Equifax Info. Servs., LLC*,
No. 18-cv-6210 (JSR), 2019 WL ........................................................................24

*Dalton v. Capital Associated Indus., Inc.*,
257 F.3d 409 (4th Cir. 2001) .............................................................................20

*DeAndrade v. Trans Union LLC*,
523 F.3d 61 (1st Cir. 2008)....................................................................9, 10, 11

*Denan v. Trans Union LLC*,
959 F.3d 290 (7th Cir. 2020) ......................................................................3, 9, 12, 13

*Fashakin v. Nextel Communs.*,
No. 05-CV-3080 (RRM), 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009) ...............................11

*Frydman v. Experian Info. Sols., Inc.*,
No. 14CV9013(PAC)(FM), 2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016)................ *passim*

*Garland v. Marine Credit Union*,
No. 18-C-270, 2018 WL 5313769 (E.D. Wis. Oct. 26, 2018) ...............................................13

*Grigoryan v. Experian Info. Solutions, Inc.*,
84 F. Supp. 3d 1044 (C.D. Cal. 2014) ...........................................................................14, 17

*Holtz v. Rockefeller & Co.*,
258 F.3d 62 (2d Cir. 2001).................................................................................................8

*Humphrey v. Trans Union LLC*,
759 F. App'x 484 (7th Cir. 2019) ...................................................................................9, 13

*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) ............................................................................................19

*McClelland v. Experian Info. Sols., Inc.*,
No. 04 C 5686, 2006 WL 2191973 (N.D. Ill. July 28, 2006) ...............................................17

*Ogbon v. Beneficial Credit Servs., Inc.*,
10 Civ. 3760 (PAE), 2013 WL 1430467 ...............................................................1, 14, 16

*Okocha v. Trans Union LLC*,
488 F. App'x 535 (2d Cir. 2012) .............................................................................9, 10, 11

*Patrolmen's Benevolent Ass'n of N.Y. v. City of N.Y.*,
310 F.3d 43 (2d Cir. 2002)..............................................................................................24

*Podell v. Citicorp Diners Club*,
112 F.3d 98 (2d Cir. 1997)...................................................................................2, 14, 17

*Safeco Ins. Co. of America v. Burr*,
551 U.S. 47 (2007).....................................................................................................19, 20

*Sarver v. Experian Info. Sols.*,
390 F.3d 969 (7th Cir. 2004) ..................................................................................14, 15, 16

*Scott v. Real Estate Fin. Grp.*,
183 F.3d 97 (2d Cir. 1999)................................................................................................1

*Selvam v. Experian Info. Solutions, Inc.*,
651 Fed. Appx. 29 (2d Cir. 2016) ....................................................................................24

*Severini v. Pa. Higher Educ. Assistance Agency*,
  No. 18CV2775 (ER), 2020 WL 1467396 (S.D.N.Y. Mar. 25, 2020)...............................22, 24

*Shimon v. Equifax Info. Servs., LLC*,
  994 F.3d 88 (2d. Cir. Jan. 20, 2021) .....................................................................................19

*Smith v. LexisNexis Screening Sols., Inc.*,
  837 F.3d 604 (6th Cir. 2016) ...........................................................................................20, 21

*Toussaint v. NY Dialysis Servs.*,
  230 F. Supp. 3d 198 (S.D.N.Y. 2017) (Karas, J.) ...............................................................7, 8

*Whelan v. Trans Union*,
  862 F. Supp. 824 (E.D.N.Y. 1994) .........................................................................14, 17, 20

*Wilcox v. Servis One, Inc.*,
  No. CV RDB-19-2535, 2020 WL 4903893 (D. Md. Aug. 19, 2020)....................................12

*Wright v. Experian Info. Sols., Inc.*,
  805 F.3d 1232 (10th Cir. 2015) ................................................................................ *passim*

**Statutes**

15 U.S.C. § 1681b(a)(3)(F)(ii) .......................................................................................6, 22

15 U.S.C. § 1681e(b) ................................................................................................ *passim*

15 U.S.C. § 1681i(a)(1)(A) ...................................................................................................3

15 U.S.C. §§ 1681i(a)(6)(B)(iii), (iv) ....................................................................................3

15 U.S.C. § 1681n(a) ...........................................................................................................19

15 U.S.C. § 1681s-2(a)(1)(A) ................................................................................................3

Consumer Leasing Act, 15 U.S.C. § 1667b(a) ....................................................................12

Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ...........................................................1

FCRA § 1681s-2(a)(8) ...........................................................................................................3

New York Law, Gen. Bus. Law § 380-j(e)............................................................................1

Truth in Lending Act ...........................................................................................................12

**Other Authorities**

12 C.F.R § 1022.41(a)............................................................................................................3

12 C.F.R. § 1022.41(a)(1)................................................................................................3

12 C.F.R. § 1022.42(a)....................................................................................................3

Fed. R. Civ. P. 36(b).....................................................................................................24

Fed. R. Civ. P. 56(a).......................................................................................................7

S. Rep. 104-650 (available at 1993 WL 516162, at *19) ..............................................3

Plaintiff alleges that Trans Union negligently and willfully violated a single provision of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA") and an analogous provision of New York Law, Gen. Bus. Law § 380-j(e) (NYFCRA), when it reported to her existing creditor that she owed a balloon payment on her auto lease.[1]  Trans Union seeks summary judgment because, with discovery on the merits of her individual claims closed, Plaintiff has not and cannot meet her burden to establish with affirmative evidence that she can prevail on her claims.

The material facts are not in dispute.  Plaintiff's auto-lease financing creditor, Hudson Valley Federal Credit Union ("Hudson Valley"), began furnishing data to Trans Union in 2018, expressly indicating that Plaintiff owed Hudson Valley a balloon payment at the expiration of her auto lease (the "Balloon Payment Information"). (SOF ¶¶ 1-2, 7-8.) The Balloon Payment Information did not trigger the alerts Trans Union uses to screen for inaccurate credit data, so Trans Union loaded the Balloon Payment Information into its consumer reporting database. (SOF ¶ 84.) Critically, Plaintiff never informed Trans Union that she believed the Balloon Payment Information was inaccurate until she filed this lawsuit.  (SOF ¶¶ 6, 60-62.) While the Balloon Payment Information was on Plaintiff's file, Trans Union only provided it to her existing creditor, JPMorgan Chase Bank, N.A. ("Chase"), which did not take adverse action against Plaintiff.  (SOF ¶¶ 50-54, 106.)

Plaintiff's claim that Trans Union is liable under § 1681e(b) for reporting the Balloon Payment Information fails for four independent reasons.  <u>First</u>, the alleged inaccuracy, i.e., that

---

[1] Trans Union focuses on Plaintiff's FCRA claim herein because, given the near identical language in the NYFCRA, the "two statutes must be construed in the same way." *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999). Therefore, to the extent that the Court grants summary judgment as to Plaintiff's FCRA claims, the same relief is warranted as to Plaintiff's NYFCRA claims.  *See Ogbon v. Beneficial Credit Servs., Inc.*, 10 Civ. 3760 (PAE), 2013 WL 1430467 at *n.6 (S.D.N.Y. Apr. 8, 2013).

Plaintiff does not owe Hudson Valley a balloon payment, cannot support the claims against Trans Union because a "consumer reporting agency" ("CRA") like Trans Union is neither qualified nor obligated to analyze a consumer's contract or applicable federal law to determine her liability for a debt. Second, Trans Union had no prior notice that the Balloon Payment Information might be inaccurate and, because the FCRA is not a strict liability statue, under the circumstances here Trans Union cannot be liable. Third, Plaintiff cannot establish that Trans Union's conduct constitutes a willful violation of § 1681e(b).  Finally, Plaintiff cannot maintain a claim for a negligent violation of § 1681e(b) because Trans Union's reporting did not cause her any actual harm. If Trans Union prevails on either of its first two arguments, Plaintiff's claims for both willful and negligent FCRA (and NYFCRA) violations must be dismissed. Should it be necessary for the Court to reach them, Trans Union's third and fourth arguments dispose of Plaintiff's claims for willful and negligent violations, respectively.

## I.   BACKGROUND

### A.   The Relevant FCRA Provisions.

The FCRA requires that CRAs prepare "consumer reports," *e.g.*, credit reports, using "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Therefore, § 1681e(b) does not make CRAs strictly liable for reporting inaccuracies. *Podell v. Citicorp Diners Club*, Inc., 112 F.3d 98, 104 (2d Cir. 1997). Instead, CRAs fulfill their obligations under § 1681e(b) primarily by reporting facially plausible information received from a source that it reasonably believes to be reliable. *See Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1240 (10th Cir. 2015). In such instances, even if the information a CRA reports turns out to be inaccurate, the CRA still has no liability under § 1681e(b).

The FCRA also imposes accuracy-related duties on entities like Hudson Valley that provide credit information to CRAs, known as "furnishers." For example, a furnisher is prohibited from providing information to CRAs if it "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A); *see also* 12 C.F.R. § 1022.42(a) (regulations requiring furnishers to "establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information" furnished to CRAs). Notably, given Plaintiff's theory of inaccuracy, the Consumer Financial Protection Bureau (the agency charged with enforcing the FCRA) requires a furnisher to provide to a CRA information that "correctly: [r]eflects the terms of and liability for the account." 12 C.F.R. § 1022.41(a)(1) (emphasis added). "Only furnishers are tasked with accurately reporting liability." *Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020) (citing 12 C.F.R § 1022.41(a)).

The FCRA contemplates that consumers play an essential role in correcting errors in their credit file. *See* S. Rep. 104-650 at 43 (available at 1993 WL 516162, at *19) (explaining that the dispute mechanisms of § 1681i, is "the heart of [it's] efforts to ensure the ultimate accuracy of consumer reports . . . ."); *Wright*, 805 F.3d at 1244 ("The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information") (citing 15 U.S.C. §§ 1681i(a)(6)(B)(iii), (iv); (b)-(c)); (SOF ¶¶ 58-59.) If a consumer believes information in her file is inaccurate, the FCRA provides two mechanisms for a consumer to dispute the accuracy of that information. First, a consumer can submit a dispute directly to a CRA pursuant to 15 U.S.C. § 1681i(a)(1)(A), which is then obligated to forward the dispute to the furnisher. Second, a consumer can submit a dispute directly to the furnisher pursuant to § 1681s-2(a)(8) of the FCRA.

**B.    The Undisputed Material Facts.**

Trans Union receives credit information about consumers from tens of thousands of data furnishers across many different industries. (SOF ¶¶ 89-90.) Trans Union uses the information it

gathers to create credit files on hundreds of millions of consumers in the United States. (SOF ¶ 88.)  Trans Union maintains an array of procedures designed to assure maximum possible accuracy of the information it reports to third parties and to correct errors that are brought to its attention. (SOF ¶¶ 63-83.)

Here, Trans Union accepted information furnished by Hudson Valley only after it determined Hudson Valley was a reliable furnisher based upon Trans Union's investigation into the company (known as "Credentialing").  (SOF ¶¶ 63-67.)  After Trans Union determined through the Credentialing process that Hudson Valley was sufficiently reliable, Trans Union entered into contractual agreement ("Furnisher Agreement") with the company, by which Hudson Valley certified that it would comply with its accuracy duties under the FCRA and investigate any consumer disputes about the accuracy of information it furnished to Trans Union. (SOF ¶¶ 69-72.)  The Furnisher Agreement also required Hudson Valley to supply data to Trans Union in the industry-standard format, known as Metro2 (the "Metro2 Format").  (SOF ¶ 74.)

Before receiving data from a furnisher, Trans Union will work with the furnisher to test and verify the integrity of the data they intend to furnisher.  After approval and upon receipt of data from any furnisher, including Hudson Valley, Trans Union conducts a series of computerized quality checks before adding the data to its consumer credit database.  (SOF ¶¶ 76-83.) █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████[2]   If Trans Union suspected Hudson Valley may be providing inaccurate or unreliable data (i.e. because data triggered one of the referenced quality checks or because Hudson Valley's dispute response behavior appeared suspicious), Trans Union would have conducted a further investigation.  (SOF ¶ 87.)  If warranted by the further investigation, Trans Union would have addressed any accuracy concerns with Hudson Valley and stopped accepting data from Hudson Valley if issues were not resolved.  (SOF ¶ 87.)

Plaintiff's lawsuit focuses on the Balloon Payment Information that Hudson Valley furnished to Trans Union.  (SOF ¶¶ 99-102.)  In November 2018, Plaintiff leased a car from Curry Hyundai Subaru.  (SOF ¶ 1.)  Hudson Valley financed Plaintiff's lease and Plaintiff's November 2018 Hudson Valley account statement reflects that she received a "new loan" for $25,928.60.  (SOF ¶¶ 2, 3.)  Hudson Valley then furnished data to Trans Union reflecting the amount of her loan, $25,928.60, and that Plaintiff owed Hudson Valley a balloon payment of $19,444.00 (the "Balloon Payment Information") at lease-end (on January 1, 2022.)  (SOF ¶¶ 7-8, 13.)  Despite receiving account statements reflecting that reporting, Plaintiff never disputed the Balloon Payment Information with Trans Union pursuant to the FCRA.  (SOF ¶¶ 60-62.)

Through the Credentialing process described above, Trans Union determined that Hudson Valley is a reliable source of information.  (SOF ¶¶ 63-67, 91.)  Prior to this lawsuit, Trans Union was never made aware of any data quality or accuracy issues with respect to data furnished by Hudson Valley.  (SOF ¶ 91.)  Between January 2017 and June 2020, Trans Union received only seventy two (72) consumer disputes of Hudson Valley accounts that included balloon payments.  However, the vast majority of those disputes (97%) did not contest the

---

[2] Pending the Court's resolution of Trans Union's letter motion seeking leave to file this memorandum under seal (*see* ECF 108), Trans Union is publicly filing a redacted copy of this memorandum and filing an unredacted copy under seal (*see* ECF 109 and ECF 110).

accuracy of the balloon payment.  Instead, only two (2) of those disputes challenged the accuracy of balloon payment information furnished by Hudson Valley.  (SOF ¶ 94.)  In both instances, Hudson Valley verified the accuracy of that information.  (SOF ¶ 95.)

Plaintiff, her opinion witnesses Lewis Linet (auto financing) and Evan Hendricks (credit reporting), and Trans Union's credit reporting expert witness, Michael Turner, all agree that auto leases with balloon payment obligations exist and that a consumer can be liable for such a payment.  (SOF ¶¶ 14-16, 18-23.)  The Metro2 Format, the standardized industry format in which Hudson Valley provides data to Trans Union, expressively provides for Hudson Valley to report a balloon payment as an auto lease credit obligation.  (SOF ¶¶ 39-41.)  Plaintiff and her two opinion witnesses acknowledge that, to determine whether a consumer is responsible for a balloon payment on an auto lease, a credit bureau like Trans Union must obtain and evaluate the terms of the consumer's lease contract.  (SOF ¶¶ 29-31.)

The only third party that Trans Union provided the Balloon Payment Information to was JP Morgan Chase Bank, N.A. ("Chase"), with whom Plaintiff had two credit accounts.  (SOF ¶¶ 50, 52.) Chase did not request the data in connection with a credit application, but instead to determine whether Plaintiff continued to meet the terms of her existing credit accounts.  *See* 15 U.S.C. § 1681b(a)(3)(F)(ii).  (SOF ¶¶ 47, 53.) Chase did not cancel or otherwise change the terms of Plaintiff's accounts after receiving the Balloon Payment Information.  (SOF ¶ 54.) Unsurprisingly then, Plaintiff testified that she was "not really concerned" about the impact of the allegedly inaccurate Balloon Payment Information on her Chase accounts.  (SOF ¶ 56.) Therefore, Plaintiff did not proffer any evidence that she suffered adverse action (i.e. a credit denial, change of terms) or monetary harm while the Balloon Payment Information was on her

file, and admitted that she has "not suffered any emotional distress, humiliation, embarrassment or mental anguish as a result of Trans Union's conduct."  (SOF ¶¶ 54, 105-106, 109-110, 124.)

**C.      Procedural Background.**

On October 31, 2019, Plaintiff filed an Amended Complaint bringing two claims against Trans Union on behalf of two putative classes, respectively (the "Amended Complaint" is attached hereto as <u>Exhibit A</u>). (ECF 4.)  The Amended Complaint alleges that Trans Union willfully or, in the alternative negligently, violated § 1681e(b) of the FCRA and a substantively identical provision of the NYFCRA. (ECF 4, ¶¶ 89-105.)  The Amended Complaint also brought non-FCRA claims against three (3) other defendants, i.e., Plaintiff's lender (Hudson Valley), the dealer who leased her the car (Linear Motors d/b/a Curry Hyundai Subaru), and the dealer's leasing agent (Credit Union Leasing of America) (collectively,  the "Former Co-Defendants"). (ECF 4, ¶¶ 77-88.)

The Court issued an order that bifurcated class-certification issues from the merits of Plaintiff's individual claims, and allowed the parties to first complete discovery and file Rule 56 motions as to Plaintiff's individual claims. (ECF 67; ECF 68.)  Without taking the deposition of Hudson Valley regarding the Balloon Payment Information, Plaintiff and dismissed her claims against the Former Co-Defendants.  (ECF 99.)

## II.      LEGAL STANDARD UNDER RULE 56

Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To prevail, the moving party must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if it might affect the outcome of the suit under the governing law." *Toussaint v. NY Dialysis Servs.*,

230 F. Supp. 3d 198, 210 (S.D.N.Y. 2017) (citation omitted) (Karas, J.)  A dispute is "genuine"

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]o survive a [summary judgment] motion a

nonmovant needs to create more than a 'metaphysical' possibility that his allegations were

correct; he needs to come forward with specific facts showing that there is a genuine issue for

trial, and cannot rely on the mere allegations or denials contained in the pleadings." *Toussaint*

230 F. Supp. 3d at 210-11 (internal quotations omitted).

Although Trans Union bears the initial burden of demonstrating the absence of a genuine

issue of material fact, it can meet its burden by pointing to "a lack of evidence to go to the trier

of fact on an essential element of the nonmovant's claim" *Toussaint* 230 F. Supp. 3d at. at 210

(quoting *CILP Assocs., L.P. v. PricewaterhouseCoopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)).

Then the burden shifts to Plaintiff who "must come forward with admissible evidence sufficient

to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.*

### III.  ARGUMENT

**A.  Plaintiff Has Not Alleged An Inaccuracy Actionable Under § 168le(b) Because Trans Union Is Not Obligated To Resolve Legal Challenges To The Validity Of Her Balloon Payment Obligation.**

To prevail on a claim for a negligent or willful violation of § 1681e(b), Plaintiff must

make a threshold showing that her credit report contains inaccurate information.  *Frydman v.*

*Experian Info. Sols., Inc.*, No. 14CV9013(PAC)(FM), 2016 WL 11483839, at *8 (S.D.N.Y. Aug.

11, 2016), *report adopted*, No. 14CIV9013 (PAC)(FM)(HBP), 2016 WL 5661596 (S.D.N.Y.

Sept. 30, 2016).  However, not every claimed inaccuracy can support a § 1681e(b) claim.

Appellate courts nationwide, including the Second Circuit, hold that a plaintiff cannot maintain a

§ 1681e(b) claim premised on an unresolved dispute with her creditor as to the terms of her loan

contract. *Okocha v. Trans Union LLC*, 488 F. App'x 535, 536 (2d Cir. 2012) (affirming "well-reasoned order," including holding that plaintiff's theory of inaccuracy "is a collateral legal attack on the validity of the debt…not a factual inaccuracy"); *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020) (plaintiff's theory of inaccuracy was actually "a contractual dispute" to be resolved by a court and not a CRA) (per curiam); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (legal inaccuracy "can only be resolved by a court of law"); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010) (CRAs are not tribunals); *Wright v. Experian Info. Sols. Inc.*, 805 F.3d 1232, 1242-44 (10th Cir. 2015) ("FCRA expects consumers to dispute the validity of a debt with the furnisher"). Similarly, the requisite inaccuracy cannot be based on an unresolved claim that a contract is illegal. *Denan*, 959 F.3d at 295 (7th Cir. 2020); *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019).

Courts dismissing § 1681e(b) claims based on these principles recognize CRAs are limited in their ability and capacity to determine a consumer's legal liability for a debt. Notably, data furnishers (i.e. Hudson Valley) are "in a better position to determine the legal validity of a debt" than CRAs because—unlike CRAs—data furnishers have access to the contracts and facts surrounding a credit transaction. *Denan*, 959 F.3d at 295; *see also Carvalho*, 629 F.3d at 892 ("the CRA is a third party, lacking any direct relationship with the consumer"); (SOF ¶ 33). Moreover, even if a consumer presents a CRA with the information and documents necessary to resolve a dispute over the validity of a debt (which Plaintiff did not do here), CRAs are not "tribunals" with authority to adjudicate contract disputes between consumers and their creditors. *Denan*, 959 F.3d at 295. Nor are they equipped to determine whether a state or federal law may invalidate a debt reported to them. *Id.* at 296. These types of adjudications must occur, in the

first instance, in a lawsuit by the consumer against the creditor. *Id.* (citing *DeAndrade*, 523 F.3d at 68).

Here, Plaintiff contends Trans Union's reporting was inaccurate because she interprets her Lease to read "that Plaintiff did not owe a balloon payment on the vehicle." (SOF ¶ 27.) Although Hudson Valley was best situated to determine whether Plaintiff's interpretation was correct, Plaintiff did not seek to resolve the issue with Hudson Valley.  Nor did she bring an FCRA claim against Hudson Valley, or even seek discovery from Hudson Valley regarding the issue.  (SOF ¶ 99.)  Instead, she seeks to hold Trans Union liable for not determining her legal liability for the balloon payment to Hudson Valley before it reported that data.  However, it is well-established that the § 1681e(b) does not charge Trans Union with making that determination.

### 1.    Section 1681e(b) does not require Trans Union to resolve Plaintiff's contract dispute with Hudson Valley.

Plaintiff does not dispute that she obtained lease financing from Hudson Valley.  (SOF ¶ 2.) She instead argues that, according to her reading of the Lease, she was not obligated to make a balloon payment. (SOF ¶ 10.) She did acknowledge, however, that if she did not return the car at the end of the lease, she would owe a lump sum payment.  (SOF ¶ 12.)  She also concedes, as do both of her opinion witnesses, that one must examine her Lease to determine whether she was obligated to make the balloon payment.  (SOF ¶¶ 27-31.)  In fact, Plaintiff looked to her Lease when trying to understand why Hudson Valley's records said she owed a balloon payment. (SOF ¶ 28.)

The Second Circuit in *Okocha v. Trans Union LLC* held that a credit bureau need not resolve such contract disputes, and affirmed the district court's grant of summary judgment for a CRA on a § 1681e(b) claim.  488 F. App'x. 535.  There, the plaintiff argued that his account

terms did not permit the furnisher to withdraw overdraft fees from plaintiff's checking account. No. 08-cv-3107, 2011 WL 2837594 at *5-6 (E.D.N.Y. Mar. 31, 2011).  Like Plaintiff's contention here that Hudson Valley was not entitled to a balloon payment under the terms of the Lease, the plaintiff in *Okocha* argued that his reported liability was inaccurate under the contract terms. 2011 WL 2837594, at *4.  However, the district court held that theory was not an actionable inaccuracy, "Plaintiff's argument that he did not agree to the terms of the overdraft line of credit is a collateral legal attack on the validity of the debt, which may be resolved only with HSBC, not a factual inaccuracy, and, thus, is insufficient to withstand summary judgment." *Id.* at *5.  *See also e.g., Fashakin v. Nextel Communs.*, No. 05-CV-3080 (RRM), 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009) (granting summary judgment on FCRA claim because plaintiff's claim she was not contractually responsible was not a requisite factual inaccuracy but a collateral attack on the validity of the debt that could only be resolved with the furnisher).

In another analogous case, *Batterman v. Carroll Glenridge, LLC*, the Eleventh Circuit affirmed dismissal of a § 1681e(b) claim where the consumer alleged that he was not liable for paying liquidated damages for terminating a lease early. 829 F. App'x at 481.  The appellate court held that the plaintiff's theory of liability was actually "a contractual dispute that require[d] resolution by a court of law, not a credit reporting agency."  The FCRA, the Eleventh Circuit noted, did not allow a § 1681e(b) claim based on the theory that the CRA "failed to accept [the plaintiff's] interpretation" that his lease allowed him to terminate early.  *Id.*  Similarly, another federal appellate court held that an inaccuracy premised on an unresolved contract issue is "a question for a court to resolve in a suit against [the creditor,] … not a job imposed upon consumer reporting agencies by the FCRA." *DeAndrade*, 523 F.3d at 68.  *See also Carvalho*, 629

- 11 -

F.3d at 891-92 (9th Cir.) (no actionable inaccuracy where plaintiff disclaimed responsibility for debt based on her interpretation of a medical services agreement).

Like numerous other courts,[3] this Court should similarly reject Plaintiff's attempt to charge a CRA with resolving contractual disputes between consumers and creditors.

**2.    Section 1681e(b) does not require Trans Union to determine if Plaintiff's lease violated federal laws.**

For the first time in her recent pre-motion letter, Plaintiff contends the Balloon Payment Information is inaccurate because it is part of a "sham lease" under the Truth in Lending Act (TILA) and exceeds the maximum amount allowed by the Consumer Leasing Act (CLA), 15 U.S.C. § 1667b(a) and "Regulation M." (ECF 100 at 2.)[4] This new and unexplained argument fails because determining whether Plaintiff's Lease violated TILA or CLA, and whether it is unenforceable because of such alleged violations, is a legal adjudication that Trans Union is neither qualified nor obligated to make under the FCRA. *See Denan*, 959 F.3d at 295-96 (holding Trans Union is not obligated to resolve plaintiff's claims that loans were barred by state usury laws).

This well-established principle makes sense.  To resolve the alleged inaccuracy here, Trans Union must have had Plaintiff's lease before it even accepted the Hudson Valley data. It

---

[3] *See e.g., Wilcox v. Servis One, Inc.*, No. CV RDB-19-2535, 2020 WL 4903893, at *4 (D. Md. Aug. 19, 2020) (dismissing § 1681e(b) claim where resolution of plaintiff's claim that fees breached a settlement agreement "require[d] a legal interpretation of the contractual terms in the settlement agreement, an exercise which the FCRA does not require of credit reporting agencies"); *Chijioke-Uche v. Equifax Info. Servs.*, LLC, No. CV 19-4006, 2021 WL 2005499, at *3 (E.D. Pa. May 20, 2021) (granting summary judgment on § 1681e(b) claim determining inaccuracy "involves a determination of whether Plaintiff and [furnisher] comported with their contractual duties"); *Baldeosingh v. Trans Union*, No. 8:20-cv-925-WFJ-JSS, 2021 WL 12150001, at *4 (Mar. 31, 2021, M.D. Fl.) (dismissing § 1681e(b) claim where "[t]o delete the [] tradeline from Plaintiff's credit file as he requested, TransUnion needed to: (1) review the terms of the sale agreement; (2) determine the parties' performance obligations; and (3) decide whether [the furnisher] complied with the agreement").

[4] Plaintiff's opinion witness Linet, who claimed to be an expert in auto financing, did not even opine the Lease was unenforceable, and testified that nothing (i.e. the law), would preclude a consumer from entering into a lease with the same terms that as what Hudson Valley furnished to Trans Union about Plaintiff. (SOF ¶¶ 19-21.)

did not.  If it obtained the Lease, Trans Union would need to determine whether TILA, CLA, or Regulation M even apply. Assuming the statutes and regulation apply, Trans Union would then need to determine whether the Lease violated those statutes.  Finally, Trans Union would need to determine the appropriate impact of these legal analyses on its reporting (e.g., remove the entire account from Plaintiff's file, reduce the balloon payment to an allowable limit, or remove the Balloon Payment Information).

Consistent with the well-established rule that the FCRA does not require Trans Union to interpret Plaintiff's lease terms, a CRA cannot be liable under § 1681e(b) when resolving the alleged inaccuracy would require a legal analysis whether the debt is barred by federal statute. *See Denan*, 959 F.3d at 295-96; *Humphrey*, 759 F. App'x 484 (affirming dismissal of similar FCRA claim for failing to plead an inaccuracy where consumer argued federal regulations required creditor to suspend obligation); *Barsky v. Experian Info. Sols., Inc*, No. 4:15 CV 1017 CDP, 2016 WL 4538526, at *2 (E.D. Mo. Aug. 30, 2016) (plaintiff's claims that her debts were barred by a statute of limitations was inactionable under § 1681e(b)); *Garland v. Marine Credit Union*, No. 18-C-270, 2018 WL 5313769, at *4 (E.D. Wis. Oct. 26, 2018) (granting summary judgment on § 1681e(b) claim because plaintiff did not challenge "a factual inaccuracy in Defendants' reporting but rather [raised] a legal dispute regarding the impact" of state law on reported debt).

**B.     Trans Union Cannot Be Liable Under § 1681e(b) Because It Reasonably Relied On Hudson Valley To Report Accurate Information.**

Alternatively, Trans Union is entitled to summary judgment because it had no notice that Hudson Valley was not a reliable data furnisher, or that the Balloon Payment Information was inaccurate.

- 13 -

Numerous appellate courts including the Second Circuit, and district courts within the Second Circuit, have held that a CRA is entitled to summary judgment on a § 1681e(b) claim when the CRA reports facially credible information it received from a reliable data furnisher without notice that the information might be inaccurate. *Podell v. Citicorp Diners Club*, 112 F.3d 98, 105 (2d Cir. 1997) (affirming grant of summary judgment because Trans Union could rely on information provided by the furnisher where plaintiff did not dispute information); *Sarver v. Experian Info. Sols*., 390 F.3d 969, 972 (7th Cir. 2004) (affirming grant of summary judgment for CRA on § 1681e(b) claim because the FCRA "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures"); *Wright*, 805 F.3d at 1240 (10th Cir.) (granting summary judgment for CRAs where tax lien was "not inaccurate on its face, inconsistent with information the CRAs already had on file, or obtained from a source that was known to be unreliable"); *Ogbon v. Beneficial. Credit Servs., Inc.*, 10 Civ. 3760 (PAE), 2013 WL 1430467 at *7 (S.D.N.Y. Apr. 8, 2013) (finding CRA's procedures reasonable as a matter of law where plaintiff failed to adduce evidence that CRA was on notice that information was inaccurate); *Whelan v. Trans Union*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (same); *Frydman*, 2016 WL 11483839, at *8 (same). This well-established rule is premised on the fact § 1681e(b) is not a strict liability statute. *Podell*, 112 F.3d at 104. Instead, "[i]f a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§ 1681e(b)] simply by reporting an item of information that turns out to be inaccurate." *Grigoryan v. Experian Info. Solutions, Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014).

1.      **Trans Union used reasonable procedures to ensure it could rely on Hudson Valley to report accurate information.**

Absent reason to doubt the reliability of such sources, Trans Union acts reasonably, as a matter of law, by relying upon reputable sources of information (*i.e.,* data furnishers).  *Sarver*, 390 F.3d at 972.  This principle is essential to the operation of the credit reporting industry because CRAs cannot (and are not required to) manually review every item of information they receive before including it in consumer reports.  *Frydman*, 2016 WL 11483839 at *13.  Such an effort would grind the credit reporting industry to a halt.  Instead, the FCRA allows CRAs to adopt procedures to ensure that they only receive data from reliable data furnishers, and then rely on those furnishers, which have their own independent duties, to furnish accurate information. (*See supra* at 3.)

Here, the undisputed material facts demonstrate that Trans Union employed reasonable procedures to ensure that it could rely upon the accuracy of the data furnished by Hudson Valley. Those procedures included: (1) investigating Hudson Valley before accepting its data to ensure reliability; (2) requiring Hudson Valley to agree to comply with the FCRA's accuracy requirements and report data in the industry standard format; (3) auditing Hudson Valley's data prior to accepting it; (4) applying data hygiene and quality screens before loading any Hudson Valley data into its database; (5) monitoring Hudson Valley's reporting and dispute responses; and (6) when necessary, taking remedial measures to resolve any accuracy issues. (SOF ¶¶ 63-87.)  Plaintiff's credit-reporting opinion witness Hendricks concedes that these procedures are designed to assure maximum possible accuracy.  (SOF ¶¶ 68, 73, 86.) Other courts considering similar procedures have agreed that these are reasonable procedures as a matter of law.  *See e.g., Frydman*, 2016 WL 11483839 at *13.

As a testament to these procedures, Trans Union has never been made aware of any data quality or accuracy issues with respect to data furnished by Hudson Valley. (SOF ¶ 91.) In fact, during a 3-1/2 year period, Trans Union received only seventy two (72) consumer disputes about the accuracy of accounts with balloon payments furnished by Hudson Valley. (SOF ¶ 93.) However, only two (or 3%) of the disputes challenged the accuracy of the balloon payment data. (SOF ¶ 94.)  The overwhelming majority of the disputes (97%) did not dispute the accuracy of the balloon payment information, even when disputing the accuracy of other data in those accounts. (SOF ¶ 94.)  Moreover, in both instances where a consumer disputed the balloon payment information furnished by Hudson Valley, Trans Union forwarded those disputes to Hudson Valley, which verified the accuracy of that information. (SOF ¶ 95.)[5]  Trans Union's credit-reporting witness opined that such a meager number of disputes did not put Trans Union on notice of a problem with Hudson Valley's reporting. (SOF ¶ 98.)

These undisputed facts entitle Trans Union to summary judgment on Plaintiff's § 1681e(b) claim. The *Frydman* decision is instructive. The court there granted summary judgment for CRAs because the record showed that the sources of the inaccurate information were "generally reliable sources of consumer credit information, and that [they] had no notice of systemic problems with the information these companies provided."  *Frydman*, 2016 WL 11483839 at *13. *See also Ogbon,* 2013 WL 1430467, at *11 (granting summary judgment to a CRA where it "reasonably believed [the furnishers] to be reliable sources" and the Plaintiff provided no contrary evidence).  This Court should do the same.

---

[5] To put these two disputes into context, in 2012 the CFPB reported that consumers disputed between 32 and 38 million items of information on credit reports.  (SOF ¶ 97.)  Surely these two (2) disputes fall short of the "prevalent unreliable information" required to put a CRA on notice that it cannot rely on a furnisher. *Sarver*, 390 F.3d at 972.

**2.    Trans Union had no notice that the Balloon Payment Information might be inaccurate because Plaintiff failed to dispute the information.**

Plaintiff's failure to notify Trans Union she disputed the Balloon Payment Information is dispositive of her claim. The Second Circuit affirmed a grant of summary judgment for just this reason in *Podell* where (unlike here) it was undisputed that the plaintiff's report contained inaccurate information. 112 F.3d at 105.  Despite the inaccuracy, the district court granted summary judgment for Trans Union concluding that it was entitled to report the inaccurate debt, "at least until it heard from [the plaintiff] directly." *Id.*

Likewise, in *Whelan v. Trans Union*, two CRAs moved for summary judgment on a § 1681e(b) claim arising out of the CRAs' admittedly erroneous reporting that plaintiffs were delinquent on their mortgage debt.  862 F. Supp. at 830.  The court granted summary judgment for one CRA "due to plaintiffs' failure to present any evidence showing that Trans Union was notified" of the inaccuracy prior to receiving the plaintiffs' letter to Trans Union disputing the inaccurate information. *Id.* at 831. *See also Grigoryan*, 84 F. Supp. 3d at 1068 ("before [plaintiff] disputed the thirty day late status" of the relevant accounts, "thereby placing defendants on notice that the reported information might be inaccurate, defendants were entitled to rely on facially credible information received from" the furnishers); *McClelland v. Experian Info. Sols., Inc.*, No. 04 C 5686, 2006 WL 2191973, at *3 (N.D. Ill. July 28, 2006) (granting summary judgment for CRA on § 1681e(b) claim where "[p]rior to Plaintiff's October 30, 2003 dispute letter, Experian had no reason to be aware of a potential error in Plaintiff's credit report"). Like the CRAs in *Podell* and *Whelan*, Trans Union cannot, as a matter of law, be liable under § 1681e(b) because plaintiff never put Trans Union on notice of an issue with Hudson Valley by exercising her right to dispute the Balloon Payment Information.

3.     **Hudson Valley's reporting of the Balloon Payment Information was facially accurate.**

As conceded by both of Plaintiff's opinion witnesses, it is undisputed that auto leases with balloon payments exist. (SOF ¶¶ 14, 15, 23.)  Therefore, it is unsurprising that Trans Union has never been alerted by consumer disputes to erroneous balloon payment information reported by Hudson Valley. (SOF ¶ 92.)  Plaintiff's purported auto-industry expert, Linet, merely testified that, in his experience, balloon payments on auto leases are not common. (SOF ¶ 17.)  But Plaintiff's credit-reporting opinion witness agreed that Linet's opinion is irrelevant because the FCRA <u>does not</u> charge Trans Union with knowing all nuances of auto-financing.  (SOF ¶¶ 24-26.)  Hendricks' testimony makes sense because Trans Union reports data from furnishers in many different industries—the FCRA simply does not mandate that CRAs employ individuals with deep industry-specific knowledge before reporting data from that industry.  *See e.g., Wright*, 805 F.3d at 1240 (concluding CRAs are not required to "employ individuals trained in American tax law" to examine every tax lien before reporting it).

The information at issue is also consistent with credit-reporting industry standards.  Trans Union mandates that furnishers furnish data in the industry-standard data format, Metro2. (SOF ¶ 74.) The Metro2 Format allows a furnisher to report a balloon payment for any type of account, auto lease or otherwise, with a deferred payment obligation. (SOF ¶¶ 40-41.)  Here, Hudson Valley furnished the Balloon Payment Information, in compliance with the industry-standard data format. (SOF ¶ 35.)  Because auto leases with balloon payments exist and the industry standard data format enables furnishers to communicate that to Trans Union, Plaintiff cannot meet her burden to establish that the Balloon Payment Information is facially suspect.

- 18 -

**C.**    **Plaintiff's Claim That Trans Union Willfully Violated § 1681e(b) Fails As A Matter Of Law.**

To obtain an award of statutory or punitive damages, Plaintiff must show that Trans Union willfully violated § 1681e(b).  *See* 15 U.S.C. § 1681n(a).  The United States Supreme Court has held that even when a defendant violates the FCRA, such a violation is not willful unless the defendant's actions were "objectively unreasonable."  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69-70 (2007).  A defendant's actions are "objectively unreasonable" where a court of appeals or a regulatory agency has issued clear guidance that warned the defendant that its interpretation of its statutory obligations was incorrect.  *Id.* at 70.

Given the objective nature of the willfulness inquiry, courts (including the Second Circuit) regularly grant summary judgment for CRAs on willfulness grounds.  *See, e.g.*, *Shimon v. Equifax Info. Servs., LLC,* 994 F.3d 88, 95 (2d. Cir. Jan. 20, 2021) (affirming grant of summary judgment on willfulness grounds when CRA offered "reasonable interpretations" of FCRA provisions consistent with its conduct); *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 947 (11th Cir. 2021) (quoting *Safeco*) (affirming grant of summary judgment on willfulness grounds where CRA's interpretation of its duties, "could 'reasonably have found support in the courts'"); *Bhutta v. Vanchoc Transp. Inc.*, 407 F. Supp. 3d 152, 156-57 (E.D.N.Y. 2018) (citing *Safeco* and granting summary judgment willfulness grounds because defendant's actions were not "objectively unreasonable").

**1.**    **Trans Union's actions were objectively reasonable because they are supported by the guidance from federal appellate courts.**

Here, Plaintiff points to no authoritative guidance warning Trans Union its procedures for accepting and reporting the Balloon Payment Information were incorrect, much less "objectively unreasonable."  To the contrary, the weight of appellate (and other) court decisions supports Trans Union's procedures for multiple reasons.

Initially, Plaintiff cannot identify any judicial or regulatory guidance indicating that Trans Union needed to scrutinize the terms of her Lease to determine her contractual obligation to make a balloon payment to Hudson Valley, or to consider various federal statutes to determine if they invalidate the credit obligation.  To the contrary, significant appellate court authority clearly instructed otherwise.  (*See supra* at 8-9.)  Thus, it was not "objectively unreasonable" for Trans Union to follow the actual guidance of federal courts of appeals.  *See, e.g., Safeco*, 551 U.S. at 69-70 (FCRA violation not willful when the lower court had adopted defendant's interpretation of FCRA provision at issue).

Further, it was also reasonable for Trans Union to rely on the information furnished by Hudson Valley, since Trans Union credentialed Hudson Valley, believed it was a reliable furnisher, and had no notice that Plaintiff's Balloon Payment Information might be inaccurate. (*See supra* at 15-16.)  Numerous courts have dismissed FCRA willfulness claims under similar circumstances.  *See*, *e.g.*, *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (concluding that district court should have granted summary judgment for CRA on willful non-compliance claim where CRA presented evidence of reasonable procedures and limited problems with its reporting); *Frydman*, 2016 WL 11483839, at *14; (plaintiff unable to establish liability on § 1681e(b) claim, "much less that any such violation was willful" where CRA relied on data from reliable furnisher absent notice it was inaccurate); *Whelan*, 862 F. Supp. at 830 (concluding plaintiff could not reach jury on willfulness issue where CRA "was not even put on notice that its report contained inaccurate information"); *see also*, *e.g.*, . *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) (pre-*Safeco* decision affirming grant of summary judgment on willful non-compliance claim where there was no evidence of widespread complaints about the alleged inaccuracy, the source of information had been reliable in the past

and the CRA corrected its mistake shortly after the plaintiff challenged the accuracy of the report).

2.      **Plaintiff's "evidence" of Trans Union's willfulness fails.**

Plaintiff offers no evidence that Trans Union intentionally reported inaccurate information, or that Trans Union knew of a problem and ignored it.  Instead, Plaintiff's willfulness argument relies solely on unproven allegations and the terms of her lease.  When asked to identify all facts and documents supporting her contention that Trans Union willfully violated the FCRA and NYFCRA, Plaintiff only identified: (a) Paragraphs 30-52, 89-101 of her Complaint; and (b) her Lease.  (SOF ¶ 103.)

Paragraphs 30-52 and 89-101 of her Complaint merely include allegations that Trans Union inaccurately reported the Balloon Payment Information and state a formal count against Trans Union for an alleged violation of § 1681e(b).  (ECF 4.)  Even if Plaintiff could somehow establish that the Balloon Payment Information was inaccurate, "a single inaccuracy, without more, does not constitute a willful violation of the FCRA."  *Smith*, 837 F.3d 6 at 611 (citations omitted).  Thus, Plaintiff's bare allegations of inaccurate reporting in her complaint—even if ultimately supported by admissible evidence—cannot support a finding of willfulness, or defeat Trans Union's present motion.

Nor can Plaintiff's general citation to her "Lease" establish a willful violation.  Separate and apart from the clear law that Trans Union was not required to interpret the Lease before accepting or reporting Plaintiff's Balloon Payment Information (*see supra* at 8-12), Plaintiff's argument makes no sense.  It is undisputed that (because she raised no dispute with Trans Union by providing it the Lease) Trans Union did not have a copy of the Lease before Plaintiff filed this suit.  (SOF ¶ 6.)  Moreover, even Plaintiff's credit-reporting opinion witness agrees that the FCRA did not require Trans Union to obtain or review the lease before reporting the Balloon

Payment Information.  (SOF ¶ 32.)  Thus, a document that Trans Union neither had, nor was required to review, cannot be the basis for Plaintiff's willfulness claims.

**D.    Plaintiff's Claim For Negligent Violation Of § 1681e(b) Fails Because She Has Suffered No Harm From The Reporting Of The Balloon Payment Information To A Single Entity.**

"In a claim for negligent violation, summary judgment is appropriate if no reasonable factfinder could find that the plaintiff is entitled to damages under the FCRA." *Severini v. Pa. Higher Educ. Assistance Agency*, No. 18CV2775 (ER), 2020 WL 1467396, at *6 (S.D.N.Y. Mar. 25, 2020) (citation omitted). "To recover actual damages, a plaintiff must establish a 'causal relation between the violation of the statute and the loss of credit, or some other harm,' and provide evidence beyond [her] own testimony that such an injury occurred." *Id.* (quoting *Burns v. Bank of America*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008)).  In other words, a plaintiff's claimed damages must be caused by the reporting of the allegedly inaccurate information to a third party.  Therefore, summary judgment is appropriate if Plaintiff fails to put forward evidence showing Trans Union's delivery of the Balloon Payment information to Chase—the only third party to whom Trans Union reported such information—caused her actual damages.  *Casella*, 56 F.3d at 474-75 (granting summary judgment due to lack of causation between alleged harm and alleged FCRA violations).

Plaintiff did not suffer any adverse action by Chase following Trans Union's reporting of the Balloon Payment Information to Chase.  (*See* ECF 105, pg. 3.)  Notably, Trans Union reported the Balloon Payment information to Chase for an "account review" purpose, relating to Plaintiff's continuing eligibility for her existing credit accounts with Chase. *See* 15 U.S.C. § 1681b(a)(3)(F)(ii) (SOF ¶¶ 47, 53).  However, there is no evidence that Chase changed the terms of Plaintiff's accounts, or took any other action against her based on the reporting of the Balloon Payment Information.  (SOF ¶¶ 54, 106.)  Plaintiff herself even testified that that she was "not

really concerned" about the impact of the alleged inaccurate reporting on her Chase accounts. (SOF ¶ 56.)

Despite her earlier admission of lack of harm, Plaintiff speculates that unidentified creditors may not have extended her firm offers of credit because the Balloon Payment Information may have prevented Trans Union from including her name on "prescreened" lists it provides to potential creditors.  (SOF ¶¶ 111-112.)  Plaintiff so speculates because she "feels" like she received fewer invitations to apply for credit while the Balloon Payment Information was on her file. (SOF ¶ 111.) Contrary to Plaintiff's "feeling," the record demonstrates that she continued receiving firm offers while the Balloon Payment Information was on her file.  (SOF ¶¶ 113, 120.)

Even if Plaintiff had evidence that she received fewer firm offers, this argument fails. As an initial matter, Plaintiff's credit score placed her in the "super prime" credit tier even while the information at issue was on her file.  (SOF ¶ 118.)  Moreover, numerous factors impact whether a consumer is offered a firm offer of credit.  (SOF ¶ 114.)  In any event, Plaintiff's speculation does not tie her loss of credit opportunities to Trans Union's reporting of the Balloon Payment Information.  Under the FCRA, a CRA can deliver a list of consumers meeting certain criteria to a third party, and that third party must then extend a "firm offer of credit or insurance" to every consumer on the list.  (SOF ¶ 45.)  If Plaintiff had received fewer firm offers as a result of the Balloon Payment Information on her file, that would mean her information was not reported to third parties.  Absent such reporting, there is no § 1681e(b) violation.  Thus, her claim fails.

Plaintiff's final attempt to avoid summary judgment on her negligent violation claim is in her recent pre-motion letter, where she claims she suffered emotional distress.  However, Plaintiff expressly disavowed suffering any emotional distress in her responses to Trans Union's

- 23 -

requests for admission. (SOF ¶ 109.)  Plaintiff's admission is dispositive on this issue.  Fed. R.

Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on

motion, permits the admission to be withdrawn or amended.").  *See also Everlast World's*

*Boxing Headquarters Corp. v. Trident Brands* Inc., No. 19-CV-503 (JMF), 2020 WL 5946450,

at *1 (S.D.N.Y. Oct. 7, 2020). Moreover, when Trans Union asked Plaintiff to identify all

documents relating to damages she claimed related to "psychological problems," Plaintiff

responded, "she has no such documents." (SOF ¶ 110.)

Even if the Court entertains Plaintiff's last-minute disavowal of her prior admission,

summary judgment is still warranted because there exists no corroborating evidence of Plaintiff's

alleged distress.  (SOF ¶ 105.)  In fact, Plaintiff's own opinion witness testified that he was not

aware of any evidence in the record reflecting adverse action against Plaintiff as a result of Trans

Union's reporting.  (SOF ¶ 106.)  Under Second Circuit law, a claim for emotional damages can

only "survive summary judgment where it is detailed, objective, and corroborated, rather than

conclusory, unsupported, or subjective."  *Frydman*, 2016 WL 11483839, at *11 (quotation

omitted).  Courts routinely grant summary judgment where such evidence is lacking.[6]  Nor could

any reasonable juror find that Trans Union's reporting to Chase caused Plaintiff emotional

distress because she testified that she was "not really concerned" about any changes to her Chase

account.  (SOF ¶ 56.)

---

[6] *Frederick v. Capital One Bank (USA)*, N.A., No. 14-CV-5460 (AJN), 2018 WL 1583289, at *12 (S.D.N.Y. Mar.
27, 2018) ("Plaintiff's own testimony of humiliation and emotional distress 'is insufficient to create a triable issue of
fact as to the existence and amount of any alleged damages.'"); *Selvam v. Experian Info. Solutions, Inc.,* 651 Fed.
Appx. 29, 32 (2d Cir. 2016) (same); *Severini*, 2020 WL 1467396 at *6 (same); *Patrolmen's Benevolent Ass'n of
N.Y. v. City of N.Y.*, 310 F.3d 43, 55 (2d Cir. 2002) ("A plaintiff's subjective testimony, standing alone, is generally
insufficient to sustain an award of emotional distress damages."); *Cohen v. Equifax Info. Servs., LLC*, No. 18-cv-
6210 (JSR), 2019 WL at *X  (S.D.N.Y. Sep. 13, 2019).

## IV.       CONCLUSION

WHEREFORE, Trans Union respectfully requests that this Court grant its motion for summary judgment.

Date: July 1, 2021                                  Respectfully submitted,

                                                     */s/ Michael O'Neil*

                                                    Michael O'Neil (Pro Hac Vice)
                                                    Albert E. Hartmann (Pro Hac Vice)
                                                    Maxwell J. Eichenberger (Pro Hac Vice)
                                                    REED SMITH LLP
                                                    10 South Wacker Drive, 40th Floor
                                                    Chicago, IL 60606
                                                     T: 12.207.1000
                                                     F: 12.207.6400
                                                    michael.oneil@reedsmith.com
                                                    ahartmann@reedsmith.com
                                                    meichenberger@reedsmith.com

                                                    Erika Kweon (SBN 4991774)
                                                    REED SMITH LLP
                                                    599 Lexington Avenue, 22nd Floor
                                                    New York, NY 10022
                                                     T: 12.521.5400
                                                     F: 12.521.5450
                                                    ekweon@reedsmith.com

                                                    *Counsel for Defendant Trans Union LLC*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on July 1, 2021, I caused the foregoing to be filed with the United States District Court for the Southern District of New York's Electronic Case Filing System. Pursuant to Federal Rule of Civil Procedure 5(b)(3), United States District Court for the Southern District of New York Local Rule 5.2, and United States District Court for the Southern District of New York Electronic Case Filing Rule & Instruction 9.1, I have thereby electronically served all Filing Users.

_/s/ Michael O'Neil_

Michael O'Neil (Pro Hac Vice)
Albert E. Hartmann (Pro Hac Vice)
Maxwell J. Eichenberger (Pro Hac Vice)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: 12.207.1000
F: 12.207.6400
michael.oneil@reedsmith.com
ahartmann@reedsmith.com
meichenberger@reedsmith.com

Erika Kweon (SBN 4991774)
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
T: 12.521.5400
F: 12.521.5450
ekweon@reedsmith.com

_Counsel for Defendant Trans Union LLC_