UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIA SESSA, *on behalf of herself and all others similarly situated*,

*Plaintiff*,

v.

LINEAR MOTORS, LLC, *et al.*,

*Defendants*.

No. 19-CV-9914 (KMK)

OPINION & ORDER

Appearances:

Daniel A. Schlanger, Esq.
Evan S. Rothfarb, Esq.
Schlanger Law Group, LLP
New York, NY
*Counsel for Plaintiff*

Michael C. O'Neill, Esq.
Albert E. Hartmann, Esq.
Maxwell J. Eichenberger, Esq.
Reed Smith, LLP
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Gia Sessa ("Plaintiff") brings this Action against Trans Union, LLC ("Defendant"), alleging Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. L. § 380-j(e), when Defendant incorrectly reported that Plaintiff owed a balloon payment on an automobile lease based on information provided by one of Plaintiff's lenders.[1] Back before the Court following

[1] Other defendants were also part of this Action but have since been terminated from the case; only Trans Union remains. (*See* Notice of Settlement between Pl. & Defs. Linear Motors,

remand from the Second Circuit is Defendant's Motion for Summary Judgment (the "Motion"). Because there are factual disputes going to whether Defendant followed reasonable procedures to ensure the maximum accuracy of Plaintiff's credit report, the Court denies summary judgment as to the violations of 15 U.S.C. § 1681e(b), but because a jury could not find Defendant's alleged violations of the statute were willful as a matter of law, the Court grants summary judgment as to Plaintiff's claims for statutory or punitive damages under 15 U.S.C. § 1681n(a).

## I. Background

### A. Factual Background

The Court presumes the Parties' familiarity with the undisputed facts as explained in its prior opinion. *See Sessa v. Linear Motors, LLC*, 576 F. Supp. 3d 1, 3–6 (S.D.N.Y. 2021). Those facts were drawn from the admissible evidence and Rule 56.1 statements and counterstatements submitted by the Parties, and no Party has contended the Court's factual findings in its prior opinion were erroneous in their supplemental briefing following the Second Circuit's decision (nor did the Second Circuit find any clear error in the Court's findings of fact). (*See generally* Suppl. Br. in Further Supp. of Mot. for Summ. J. ("Def.'s Suppl. Br.") (Dkt. No. 141); Pl.'s Opp'n to Def.'s Suppl. Br. ("Pl.'s Suppl. Br.") (Dkt. No. 144).)

### B. Procedural History

The Court also presumes the Parties' familiarity with the procedural history of this case until its prior Opinion, *see Sessa*, 576 F. Supp. 3d at 6–7, as explained therein. Following the Court's order granting summary judgment to Defendant, *id.* at 14, Plaintiff appealed, (*see* Notice of Appeal (Dkt. No. 135)). The Second Circuit vacated and remanded in light of intervening

LLC d/b/a Curry Hyundai Subaru; Hudson Valley Fed. Credit Union; & CULA (Dkt. No. 91); Stip. of Dismissal with Prejudice as to Certain Defs. (Dkt. No. 99).)

precedent decided after the Court's order, instructing the Court to continue to the remainder of the statutory analysis and analyze whether Defendant "failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42–44 (2d Cir. 2023) (quotation marks omitted). After the Court scheduled a conference, the Parties submitted supplemental briefing about the effects of the Second Circuit's decision on the again-pending Motion for Summary Judgment. (*See* Def.'s Suppl. Br.; Pl.'s Suppl. Br.)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 352, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (substantially same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must

come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted, citation and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [the non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL

6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

"As a general rule, 'district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage.'" *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183 (S.D.N.Y. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where, however, the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Simpri v. City of N.Y.*, No. 00-CV-6712, 2003 WL 23095554, at *8 (S.D.N.Y. Dec. 30, 2003)); *see also*

*Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "where each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court"). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [the plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact"); *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *6 (S.D.N.Y. Sept. 9, 2024) (same).

B. Analysis

Remaining in this Action are Plaintiff's claims against Defendant Trans Union under 15 U.S.C. § 1681e(b) and New York's FCRA-analogous statute.[2] 15 U.S.C. § 1681e(b) requires credit reporting agencies ("CRAs") to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" when preparing consumer reports. A plaintiff bringing a § 1681e(b) claim "must establish that":

> (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

---

[2] As the Second Circuit explained, these two statutes have "substantially similar" language and thus "must be construed in the same way," although its "holding [wa]s limited to the construction of the FCRA." *Sessa*, 74 F.4th at 41 n.6 (citing *Scott v. Real Est. Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999)). This Court's conclusions as to Plaintiff's FCRA claim thus also apply to Plaintiff's equivalent New York state law claims.

*Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2013 WL 1430467, at *6 (S.D.N.Y. Apr. 8, 2013) (quoting *Gorman v. Experian Info. Sols., Inc.*, No. 07-CV-1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)); *see also Lewis v. Experian Info. Sols., Inc.*, No. 23-CV-857, 2024 WL 1308705, at *7 (E.D.N.Y. Mar. 27, 2024) (same); *Watson v. Caruso*, 424 F. Supp. 3d 231, 244 (D. Conn. 2019) (same).

The Court granted summary judgment to Defendant because it found Plaintiff had failed to establish the second element. *See Sessa*, 576 F. Supp. 3d at 9 ("While commonly articulated as the second element in an FCRA case, the Court reviews the accuracy of [Defendant's] report regarding Plaintiff first because reporting accurate information absolves a CRA of liability.") On remand, the Court again begins there, then proceeds to the remainder of the statutory analysis.

1. Actionable Inaccuracy

In its first ruling on Defendant's Motion, the Court held that "Trans[]Union's report cannot be said to be misleading or patently inaccurate" because the misreported balloon payment amounted to "a legal dispute . . . not factual disputes regarding whether Defendant reported accurate numbers." *Sessa*, 576 F. Supp. 3d at 13–14 (citing, *inter alia*, *Denan v. Trans Union LLC*, 959 F.3d 290, 297 (7th Cir. 2020)). Accordingly, the Court granted summary judgment. *Id.*

The Second Circuit vacated and remanded, holding that under *Mader v. Experian Info. Sols.*, 56 F.4th 264 (2d Cir. 2023), decided while the appeal of the Court' summary judgment order was pending, "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable by the CRA." *Sessa*, 74 F.4th at 42. The Second Circuit explained that the "objectively and readily verifiable" question "will *sometimes*, as it did in *Mader*, involve an inquiry into whether the debt is the subject of a legal dispute"; however, "that

does not mean that *any* dispute that might arguably turn on a question of law is non-cognizable under the FCRA," because "CRAs may be required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." *Id.* at 43 (quotation marks omitted).

In their supplemental briefing following remand, the Parties do not contest whether the conceded inaccuracy here is "objectively and readily verifiable" under the rule announced in *Mader* and reaffirmed in the Second Circuit's opinion in *Sessa*. (*See* Def.'s Suppl. Br. 4–7; Pl.'s Suppl. Br. 5–17.) Although the Second Circuit did not explicitly resolve whether the inaccuracy here was "objectively and readily verifiable," its dicta cannot be read as leaving that question open, explaining that the reported balloon payment did not reflect the "straightforward application of law to facts," because its inaccuracy could be objectively proven by reference to the original lease instrument Plaintiff signed. *See Sessa*, 74 F.4th at 43; *id.* at n.7 ("There simply was no balloon payment due—as a matter of fact. The lease provided for an option to purchase, not a required balloon payment.").

The Court accordingly follows the Second Circuit's guidance, notes Defendant's abandonment of the issue in its supplemental briefing, and concludes for the purposes of this motion that Plaintiff has at least established a genuine dispute as to whether the misreported balloon payment was objectively and readily verifiable.

<u>2. Reasonable Procedures</u>

The Court next turns to the "reasonable procedures" element. 15 U.S.C. § 1681e(b) requires CRAs to "follow reasonable procedures to ensure the maximum possible accuracy of the information concerning the individual about whom the report relates." "The standard for evaluating negligent failure to follow reasonable procedures is what a reasonably prudent person

would do under the circumstances, taking into account whether the plaintiff's 'preferred' procedures would be a 'feasible task to lay on the credit agencies.'" *Choudhury v. Citibank, N.A.*, No. 18-CV-2188, 2018 WL 11447942, at *2 n.2 (quoting *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, at *16 (S.D.N.Y. June 22, 2016)). And "[t]o establish a willful violation of Section 1681e(b), [Plaintiff] must show that [the CRA's] failure to follow reasonable reporting procedures was knowing or reckless." *Id.* at *2. Courts have emphasized that this statutory language does not penalize any inaccuracy in a report, because "[e]ven if the information contained in the challenged credit report is inaccurate, a credit reporting agency is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." *Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-2266, 2024 WL 3759082, at *5 (S.D.N.Y. Aug. 12, 2024) (citing *Ogbon*, 2013 WL 1430467, at *6); *see also Wilson v. CoreLogic SafeRent, LLC*, No. 14-CV-2477, 2017 WL 4357568, at *3 (S.D.N.Y. Sept. 29, 2017) (same); *Obabueki v. Int'l Bus. Mach. Corp.*, 145 F. Supp. 2d 371, 399 (S.D.N.Y. 2001) (contrasting the "less specific standard of 'maximal accuracy'" in § 1681e(b) from the "'complete and up to date' requirement of [§] 1681k," and also noting § 1681e(b) "requires that the agency only have 'reasonable procedures' to ensure such accuracy, rather than the 'strict' procedures required under [§] 1681k").

The reasonableness of a CRA's procedures under § 1681e(b) is typically a jury question. *See Wentworth v. Metrodata Servs., Inc.*, No. 17-CV-594, 2021 WL 516283, at *6 (W.D.N.Y. Feb. 11, 2021) ("Reasonableness is typically a question for the jury because '[j]udging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'" (quoting *Cortez v.*

*Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010))); *Wilson*, 2017 WL 4357568, at *3 ("Whether or not the credit reporting agency followed reasonable procedures will be a jury question in the overwhelming majority of cases." (quotation marks omitted)); *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 330 (D. Conn. 2009) (same). But some courts have granted summary judgment based on this element where the plaintiff, for example, "identified *no* basis on which a jury could find that [a CRA] had a basis to question the accuracy of the reports it had received from [f]urnishers," *Ogbon*, 2013 WL 1430467, at *7 (emphasis added); *see also Tescher*, 2024 WL 3759082, at *5 (granting summary judgment where there was "no evidence in the record that [the CRA] had any basis to believe that [the furnisher] was an unreliable reporter" or any "evidence which would suggest that [the furnisher] had systemic problems with its procedures of reporting" the misreported debt at issue), or the information furnished to the CRA was "not inaccurate on its face, inconsistent with information the CRA[] already had on file, or obtained from a source that was known to be unreliable," *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1240 (10th Cir. 2015); *see also Frydman v. Experian Info. Sols., Inc.*, No. 14-CV-9013, 2016 WL 11483839, at *12 (S.D.N.Y. Aug. 11, 2016) (same).

There is no dispute here that "the accuracy of a report showing a consumer owes a balloon payment on an auto loan would 'depend on what the underlying lease said;'" that Defendant is "not require[d] . . . to receive and review [a] lease contract before reporting data about a lease;" and that "the furnisher," HVFCU, is charged with "know[ing] the terms and liability of the accounts about which it furnishes information because it has a direct relationship with the consumer." (Pl.'s Loc. Civ. R. 56.1(b) Counter-Statement of Controverted Material Facts ("Pl.'s Counter-56.1") ¶¶ 29, 32–33 (Dkt. No. 123-20).) Nor is there any dispute that Defendant followed its own procedures to assure itself of HVFCU's reliability in general before

including HVFCU-furnished information in its reports (although it is disputed whether those procedures are adequate, and whether HVFCU followed its own representations to Defendant). (*See* Pl.'s Counter-56.1 ¶¶ 63–68.) *See Sessa*, 576 F. Supp. 3d at 5–6. The Parties also agree Defendant accurately relayed the (inaccurate) information it received from HVFCU, and that Defendant received that information in the data format HVFCU was obligated to use, which allowed for the reporting of balloon payments in auto leases. (*See* Pl.'s Counter-56.1 ¶¶ 8, 35.)

Where the Parties differ is whether a jury should decide those procedures were "reasonable" under the statute. Defendant argues they were reasonable as a matter of law for three independent reasons: first, that Defendant relied on "reputable sources of information" in reporting the balloon payment information from HVFCU, (*see* Def.'s Mem. in Supp. re. Mot. for Summ. J. ("Def.'s Mem.") 15 (Dkt. No. 112)); second, that Plaintiff failed to put Defendant on notice of the inaccuracy by disputing it with Defendant before filing suit, (*see id.* at 17); and third, that the misreported balloon payment obligation was "facially accurate" because "auto leases with balloon payments exist," (*id.* at 18). The Court agrees with Plaintiff that none of these three arguments requires granting summary judgment to Defendant.

The Court starts with the facial accuracy of the information. Plaintiff argues that the reported inaccuracy here, the balloon payment on an auto lease, is "facially illogical" and "implausible," and its presence alone should have put Defendant on notice of inaccuracies in Plaintiff's report. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") 15 (Dkt. No. 123-19); *see also* Pl.'s Suppl. Br. 10–11.) More specifically, Plaintiff has put forth evidence through her expert, Lewis Linet, that "a balloon payment within a consumer lease is virtually non-existent," and that such a term would be an "oddit[y] within the auto finance industry." (Pl.'s Suppl. Br. 10–11.) Her other expert, Evan Hendricks, found in his report that, per the Consumer Data

Industry Association ("CDIA") manual, no "special comment codes" or "tradeline segments" pertaining to auto leases refer to balloon payments, which he explained "demonstrates that the consumer reporting industry," including Defendant, "knows that auto leases and balloon payments should not be linked." (Rothfarb Decl. Ex. 12, at 2 ("Hendricks Rep.") (Dkt. No. 123-12); *see also* Pl.'s Mem. 4 (pointing to Defendant's own online resources for consumers explaining that auto leases typically conclude with "the *option* to buy" the vehicle at a reduced price, saying nothing about the possibility of balloon payments).) Plaintiff also puts forth expert testimony that the numbers on the reported lease—monthly payments of $237 for 36 months, then a one-time balloon payment of $19,444, far in excess of the actual lease obligation—are "not logical or reasonable" to exist in a loan. (Pl.'s Suppl. Br. 11 (citing Hendricks Rep. 1–2).) That this sort of debt, both in its nature and amount, is exceedingly rare if it exists in the market at all, makes it at least subject to dispute whether its reporting was "inaccurate on its face" from a CRA's perspective. *Wright*, 805 F.3d at 1240. Defendant notes the Parties agree it is *possible* that auto leases with balloon payments exist. (*See* Pl.'s Counter-56.1 ¶¶ 14–15, 22.) But Plaintiff has adduced evidence that CRAs, including Defendant, screen for plenty of debts that are metaphysically possible if a debtor agrees to their terms, but that are unusual enough in size or nature to merit a closer look. (*See, e.g.*, Rothfarb Decl. Ex. 3 ("Garst Dep."), at 92:24–25 ("TransUnion has policies and procedures to evaluate extremely high values.").)

Defendant contends, accepting the possibility of the existence of this sort of lease, that "FCRA does not charge [Defendant] with knowing all nuances of auto-financing," or "mandate that CRAs employ individuals with deep industry-specific knowledge before reporting data from that industry." (Def.'s Mem. 18.) True, courts have held that where a plaintiff's position would require a CRA to hire subject-matter experts in every category of debt a consumer might hold to

determine its accuracy, that would not be a required "reasonable procedure" as a matter of law. *See, e.g.*, *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1109 (8th Cir. 2022) ("We join our sister circuits in rejecting the invitation to mandate that CRAs hire individuals with legal training to preemptively determine the validity of reported debts."); *Wright*, 805 F.3d at 1241 ("The pertinent case law also shows that the costs to the CRAs of employing individuals trained in American tax law to examine every [notice of federal tax lien] outweighs the potential of harm to consumers like [the plaintiff]."). But here, Plaintiff adduces evidence of potential gaps in Defendant's procedures that a jury could find would not require costly expertise to fill, or that could be filled with automatic up-front screening, particularly considering auto loans and leases are highly regular transactions for CRAs to come across, and Plaintiff has presented evidence that Defendant knows, or should know, that this sort of transaction is highly unusual. (*See, e.g.*, Pl.'s Mem. 17–18 (pointing to deposition of James Garst indicating Defendant does not have particular screening procedures for types or amounts of balloon payments); Hendricks Rep. 2–3 (explaining the CDIA manual nowhere connects balloon payments and leases); Pl.'s Mem. 4 (pointing to Defendant's online resources about auto leases, which note that options to buy a vehicle at its residual value at the end of a lease are common, and are silent as to balloon payments).) Perhaps changing these procedures to address incorrect reporting of auto lease residuals upfront would be unreasonable, and their burdens would outweigh their benefits; perhaps not. That calculus is for a jury to make. *See Wentworth*, 2021 WL 516283, at *6 (explaining that "[r]easonableness is typically a question for the jury"); *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001) (finding jury question whether CRA followed unreasonable procedures by not instructing subvendors as to proper sources of certain criminal history information).

Next, the Court turns to Defendant's contention that its procedures were reasonable as a matter of law because those procedures assured Defendant of HVFCU's reliability as a furnisher. (*See* Def.'s Mem. 15–16.) Of course, "reliance on a third party's inaccurate information does not render a defendant's procedures *per se* reasonable," (Pl.'s Mem. 18 (quoting *Mader v. Experian Info Sols.*, No. 19-CV-3787, 2020 WL 264396, at *4 (S.D.N.Y. Jan. 17, 2020)), but Defendant does not take so extreme a position. Defendant offers undisputed evidence that it does more than merely accept information from third-party furnishers with its eyes closed—for example, as with other furnishers, Defendant required HVFCU to submit data in industry-standard formats and to contractually guarantee the accuracy of its data (twice). *See Sessa*, 576 F. Supp. 3d at 5–6. And, as Defendant correctly contends, courts have held that where there is "*no* basis . . . to question the accuracy of the reports [a CRA] had received from [f]urnishers," summary judgment may be appropriate on a § 1681e(b) claim on the grounds that a CRA followed reasonable procedures. *Ogbon*, 2013 WL 1430467, at *7 (emphasis added); *see also Tescher*, 2024 WL 3759082, at *6 (granting summary judgment where the plaintiff had pointed to "*no* evidence in the record that [the CRA] had any basis to believe [the furnisher] was an unreliable reporter" (emphasis added)); *cf. Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) ("Our sister circuits have [explained] . . . [that] a reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable."); *Wright*, 805 F.3d at 1239–40 ("Courts have held CRAs must look beyond information furnished to them when it is inconsistent with the CRAs' own records, contains a facial inaccuracy, or comes from an unreliable source." (collecting cases)).

But here, Plaintiff posits *some* basis to question HVFCU's reports, or in other words, *some* dispute as to whether Defendant had notice of their unreliability. She has disputed whether

Defendant did, in fact, receive information notifying them of data quality issues with HVFCU's auto lease reports, from some combination of HVFCU's furnishing data purportedly outside the terms of its contract with Defendant, prior complaints that HVFCU reported the same erroneous balloon payments that Plaintiff alleges should have prompted Defendant to check the dataset for similar errors, and more. (*See* Pl.'s Mem. 15 (noting HVFCU's contracts with Defendant approved them to furnish information only about *loans*, not leases, but that HVFCU nevertheless provided data coded as leases); *id.* (noting HVFCU was not in good standing with the Better Business Bureau at the time it was credentialed); Garst Dep. 82:8–20 (noting Defendant had received at least two complaints "specifically disput[ing] balloon payment information" furnished by HVFCU); Rothfarb Decl. Ex. 2 ("Orlowski Dep."), at 45:3–8 (same); Pl.'s Counter-56.1 ¶¶ 93, 96 (noting Defendant received seventy-two complaints regarding balloon payments from HVFCU in total, and disputing contents of the remaining seventy complaints other than the two acknowledged above on the basis that Defendant did not specifically code the nature of every dispute it received).) Whether this information is sufficient to call HVFCU's reliability into question as a furnisher of auto lease information during the relevant period—particularly, as Defendant notes, in the context of the many disputes it receives in the course of its operations, (*see* Reply Mem. in Supp. re: Mot. for Summ. J. ("Reply") 6 (Dkt. No. 131)), and the standards to which it holds its furnishers, *see Sessa*, 576 F. Supp. 3d at 5–6—is another fact dispute for a jury to resolve. *See, e.g.*, *Anthony v. Equifax Info. Servs., LLC*, No. 13-CV-1424, 2018 WL 2287954, at *6 (E.D. Cal. May 18, 2018) (denying summary judgment on § 1681e(b) claim where CRA had made inaccurate report in reliance on furnisher and the CRA had been put on "notice of potential inaccuracies," because "the reasonableness of [the CRA's] continued reliance on the furnishers is a factual question best left to a jury").

Finally, the Court disagrees with Defendant's argument that Defendant could not have been liable under § 1681e(b) before Plaintiff put Defendant on notice of the inaccuracy. (Def.'s Mem. 17 ("[Defendant] cannot, as a matter of law, be liable under § 1681e(b) because [P]laintiff never put [Defendant] on notice of an issue with Hudson Valley by exercising her right to dispute the [b]alloon [p]ayment[.]").) There are three issues with this argument.

The first is, as the Court explained, Plaintiff has pointed to disputed evidence as to whether Defendant *was* put on actual or constructive notice of the inaccuracies here. The second is that neither the statute nor case law required Plaintiff to notify Defendant of the inaccuracy before bringing suit. Defendant chiefly relies on *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98 (2d Cir. 1997). But *Podell* differs from this case in meaningful ways. There, the plaintiff's identity had been stolen, and furnishers reported debts incurred by those who stole his identity to CRAs, who continued to report those debts until they heard from the plaintiff that the debts were invalid. *Id.* at 105. Unlike this case, *Podell* did not involve any facts that might have given the CRAs notice of problems in the data they were supplied, and did not involve debts that, as Plaintiff offers testimony to support, were facially implausible; it is hard to see on the facts of *Podell* how, short of notification from the plaintiff there, the CRA was to take "reasonable procedures" to avoid the inaccuracy.

The third is that *Podell* did not "decide whether, as a matter of law, a credit reporting agency that organizes its protections for its consumers so as to comply with the reinvestigation procedures mandated by FCRA § 1681*i*"—which requires certain investigatory steps by CRAs after receiving disputes from consumers—"necessarily acts 'reasonably' within the meaning of FCRA § 1681*e*," a conclusion Defendant's position would require this Court to embrace. 112 F.3d at 105. But Defendant's position would require the Court to read two different sections of a

statute as coextensive with one another, which would be "an interpretation [of § 1681e(b)] that renders it pointless." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012) ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision . . . and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred.").[3] The Court therefore agrees with those courts that have found "there is no requirement that a customer file a dispute with a CRA before bringing a claim against the CRA for a violation of § 1681e(b)" as a general matter, though in cases like *Podell*, that may be the only way a CRA would have notice of an inaccuracy or the potential for inaccuracies. *Benjamin v. Experian Info Sols., Inc.*, 561 F. Supp. 3d 1330, 1339 (N.D. Ga. 2021) (collecting cases); *see also Jones v. Equifax Info. Servs. LLC*, No. 24-CV-1271, 2025 WL 2299415, at *3 (D. Md. Aug. 8, 2025) ("[A]s to her § 1681e(b) claim, [the plaintiff] rightly points out that she is not required to first file a dispute with the CRA before suing.").

Accordingly, drawing all reasonable inferences in Plaintiff's favor, there are fact disputes as to whether Defendant followed reasonable procedures within the meaning of § 1681e(b).

3. Injury and Causation

Defendant argues the Court must grant summary judgment because Plaintiff "did not suffer any adverse action by Chase," "the only third party to whom [Defendant] reported" the balloon payment obligation, "following [Defendant's] reporting of the [b]alloon [p]ayment

---

[3] That said, at least one court in the Second Circuit has held the *converse* is true: that when a CRA violates § 1681i by failing to reinvestigate a file after a customer notifies the CRA of an inaccuracy, it may also violate § 1681e(b). *See Choudhury*, 2018 WL 11447942, at *4. That is consistent with the Court's view to the extent § 1681i is a necessary, but not sufficient, aspect of "reasonable procedures" under § 1681e(b).

[i]nformation to Chase." (Def.'s Mem. 22.) Plaintiff does not dispute that Chase did not change her access to credit upon receipt of the report. (*See id.* at 23; Pl.'s Mem. 23–24; Pl.'s Counter-56.1 ¶ 54.)[4] But two categories of harms are closer calls.

First, Plaintiff both testified in her deposition and swore in an affidavit that she received fewer favorable credit offers in the time the balloon payment appeared on her credit report or that her credit was otherwise impaired. (*See* Sessa Decl. ¶¶ 29–30 (Dkt. No. 124) ("After Trans Union began reporting the balloon payment obligation on my [l]ease, I noticed that I stopped receiving promotions in the mail offering me credit cards and loans at favorable rates. It was very noticeable to me . . . because I was actively interested in pursuing additional credit cards and taking advantage of promotional sign-up bonuses."); Rothfarb Decl. Ex. 1 ("Sessa Dep."), at 55:1–8 (Dkt. No. 123-1) ("I haven't gotten any [offers] from any other card, though, which is odd, because I usually get them in the mail . . . I used to get offers, and now I'm not getting offers[.]"); *id.* at 55:17–18, 56:11–12 (explaining Plaintiff believes the reported inaccuracy caused her to receive fewer offers because the offers dropped off after it, and further, that her credit score "went down a little bit for the first month or two" after the inaccuracy was first reported); *see also* Pl.'s Counter-56.1 ¶ 120 (disputing whether Plaintiff received fewer prescreened card offers in the relevant period, but not disputing that Defendant "provided limited information about her to companies . . . during the time in which the [b]alloon [p]ayment [i]nformation may have been on her file"); *id.* ¶ 117 (disputing how Defendant calculated effects on her credit score).) She also offered some expert opinions to this effect. (*See, e.g.*, Hendricks

---

[4] While Plaintiff deems the inclusion of this inaccuracy in her report "derogatory," (Pl.'s Mem. 23), she does not contend in her briefing that she suffered any reputational harm for which she could recover, *see Ngambo v. Chase*, No. 20-CV-2224, 2023 WL 9004789, at *4 (S.D.N.Y. Dec. 28, 2023) ("[P]laintiffs may sustain a claim under the FCRA for reputational harm.")

Rep. 4 (opining that "[i]naccurate balloon payments are specifically harmful to a consumer's creditworthiness because it makes it look like the consumer is required to pay a sizeable debt on a specific future date, when in fact no such debt is owed"); Rothfarb Decl. Ex. 5 ("Linet Rep."), at 3 (opining that consumers in Plaintiff's position "have suffered credit damage").) Defendant's arguments that this injury and theory of causation are, in its expert's words, "extraordinarily farfetched" considering her super-prime credit score both before and after the payment was reported, (*see* Def.'s Statement of Material Facts Pursuant to Fed. R. Civ. P. 56 and S.D.N.Y. Loc. R. 56.1 ("Def.'s 56.1") ¶ 119 (Dkt. No. 114)), and that a variety of factors other than the reported balloon payment and its effects on Plaintiff's credit may have influenced whether she would receive prescreened offers, (*see id.* ¶ 114), go to the weight and persuasiveness a jury assigns to Plaintiff's claims that she suffered this harm and that Defendant caused it. *See generally Gardner-Alfred v. Fed. Reserve Bank of New York*, 143 F.4th 51, 68 (2d Cir. 2025) (explaining that "in the rare circumstance where the plaintiff relies almost exclusively on her own testimony . . . to establish a triable issue of fact," courts will find "that such testimony raises only a sham issue of fact where the record contradictions with the plaintiff's testimony are inescapable and unequivocal" (quotation marks and alterations omitted)); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542, 2025 WL 354671, at *4 n.3 (S.D.N.Y. Jan. 30, 2025) ("'[T]rial courts should not arrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choosing sides in the battle of the experts' in a context like summary judgment." (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1135 (2d Cir. 1995))). Accordingly, Plaintiff's testimony—and that of her experts—create a fact dispute whether, because of the reported balloon payment, she received

fewer credit opportunities or her credit was impaired (however much and for however long), and the strength of that testimony is for a jury to evaluate.

Second, Plaintiff contends she suffered emotional distress from the reported balloon payment. In her original responses to Defendant's requests for admission, however, she admitted that she had "not suffered any emotional distress, humiliation, embarrassment, or mental anguish as a result of [Defendant's] conduct," (Def.'s 56.1 ¶ 109), and had no documentary evidence relating to any psychological problems incurred from Defendant's conduct, (*id.* ¶ 110). Plaintiff now seeks to withdraw her admission that she suffered no emotional distress in light of her deposition testimony, in which she describes Defendant's reporting as having caused her some "concern[]," (Sessa Dep. 19:20), having been "stressful," (*id.* at 47:6–7), "frustrat[ing]," and the like, which she connects at least occasionally to Defendant's reporting, (*see id.* at 19:18–21, 33:23–34:14). Federal Rule of Civil Procedure 36(b) allows the Court to "permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." "Under Rule 36(b), the decision to excuse [a party] from its admissions is in the [C]ourt's discretion," and "[b]ecause the language of the Rule is permissive, the [C]ourt is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the [R]ule." *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 537 F. Supp. 3d 497, 500 (S.D.N.Y. 2021) (citing *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651–52 (2d Cir. 1983) (interpreting a prior version of Rule 36 that has not been substantively changed)); *see also Cement & Concrete Workers Dist. Council Welfare Fund v. Manny P. Concrete Co., Inc.*, 145 F.4th 204, 209–210 (2d Cir. 2025) (same). Although Defendant largely attacks Plaintiff's lack of any basis for withdrawing the admission rather than

engaging with Rule 36, (*see* Reply 2, 9–10)—and the Court agrees Plaintiff has offered no basis for withdrawing the admission—more relevant to the Rule 36 analysis, the Court also finds that allowing withdrawal would not necessarily advance the merits, considering Plaintiff can point to other injuries to advance her case (as discussed above), and could prejudice Defendant. It would allow Plaintiff to pursue a new theory of damages that is not in her Amended Complaint and that opposing counsel did not have notice of during her deposition or during individual discovery, which has been closed for years, and not on the basis of any fact that was unknown to Plaintiff at the time she made the admission. *See, e.g.*, *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434, 2011 WL 3511296, at *4 (E.D.N.Y. Aug. 10, 2011) ("[T]he Court finds that [the] defendants would be prejudiced if the Court admitted [the] plaintiff's responses at this late stage. Discovery has closed, and permitting the amended answers more than two years after the initial admissions would deprive defendants of the ability to conduct additional discovery concerning those answers."). The Court accordingly does not permit Plaintiff to withdraw her admission that she suffered no emotional distress or related injuries, and therefore does not find she has established a genuine dispute as to that category of harm.[5]

---

[5] Even if the Court were to permit Plaintiff to withdraw her admission, it would find her testimony insufficient on its own to establish disputed questions of fact on emotional distress that she could present to a jury. "A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages. Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself." *Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002) (citations omitted); *see also Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 215 (D. Conn. 2013) (citing *Patrolmen's* in evaluating emotional distress argument in motion for summary judgment in FCRA claim); *Caltabiano v. BSB Bank & Tr. Co.*, 387 F. Supp. 2d 135, 142 (E.D.N.Y. 2005) (same). Here, Plaintiff only points to several different points in her deposition transcript suggesting she was upset, stressed, or frustrated when she saw the inaccurate report. (*See* Pl.'s Mem. 25.) Courts have found insufficient evidence to support an emotional damages claim in FCRA cases where plaintiffs have presented as much, or

4. Willfulness

Finally, Defendant contends Plaintiff has not shown a jury could find Defendant willfully violated § 1681e(b). (*See* Def.'s Mem. 19–22.) Plaintiff must make a showing of willfulness if she seeks to recover statutory or punitive damages. *See* 15 U.S.C. § 1681n(a) (providing that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter . . . is liable . . . in an amount equal to the sum of" actual damages, statutory damages between $100 and $1,000, punitive damages, and costs and fees).

"FCRA willfulness . . . typically involves a showing 'that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others' or 'intentionally misled consumers or concealed information from them.'" *Martinez v. Celtic Bank*, No. 22-CV-6327, 2024 WL 1020588, at *7 (S.D.N.Y. Mar. 8, 2024) (quoting *Owoyemi v. Credit Corp. Sols., Inc.*, 677 F. Supp. 3d 285, 300 (S.D.N.Y. 2023)). And "[t]o survive summary judgment on a willful non-compliance claim, a plaintiff must set forth affirmative evidence demonstrating

---

more, evidence of emotional distress than Plaintiff does here, in circumstances as likely or more to produce emotional distress. *See, e.g.*, *Neclerio*, 983 F. Supp. 2d at 215–16 ("Because [the p]laintiff has not produced any evidence of emotional damages beyond his own conclusory deposition testimony and . . . a single conclusory sentence in the declaration [of a former employer], [the p]laintiff has failed to offer sufficient evidence to support his claim for emotional damages" from inaccurate inclusion of bankruptcy and tax lien on credit report); *Wenning*, 2016 WL 3538379, at *21–22 (finding the plaintiff "has not produced sufficient evidence of emotional distress for a reasonable jury to award such damages" where, notwithstanding deposition testimony that she "was humiliated, surprised," and "cried hysterically," no third-party corroboration was offered and "the duration of the offending report and/or the level of publicity it generated" were not sufficient circumstances to support the claimed emotional distress); *Frydman*, 2016 WL 11483839, at *12 (finding the plaintiff had "not produced evidence sufficient for a reasonable jury to award emotional damages" based on passing references to "embarrassment and humiliation," with no "elaborat[ion] on [the plaintiff's] symptoms or their cause," and plaintiff "never [having] sought medical treatment," based on inaccurate report of six-figure default judgment).

conscious disregard or deliberate and purposeful actions." *Owoyemi*, 677 F. Supp. 3d at 301 (citing *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 252 (S.D.N.Y. 2008)).

"In *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court held that 'willfully' also encompasses actions taken 'in reckless disregard of statutory duties' imposed by the FCRA." *Martinez*, 2024 WL 1020588, at *7 (quoting *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 93 (2d Cir. 2021)). To show recklessness, Plaintiff must demonstrate "not only a violation under a reasonable reading of the statute's terms, but [also] that [Defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 41 F. Supp. 3d 411, 413 (S.D.N.Y. 2014) (quoting *Safeco*, 551 U.S. at 47). A company does not act in "'reckless disregard' of the FCRA, however, if its reading of the statute was not objectively unreasonable." *Shimon*, 994 F.3d at 93 (internal quotation marks and alteration omitted) (quoting *Safeco*, 551 U.S. at 69). The *Safeco* defense leaves "little . . . for the Court to put in a jury's hands" because of the objectivity of the inquiry. *Nguyen-Wilhite v. Tapestry, Inc.*, No. 23-CV-3339, 2026 WL 836247, at *10 (S.D.N.Y. Mar. 26, 2026).

Summary judgment to Defendant on Plaintiff's willfulness argument is appropriate here on both grounds.

First, as to Defendant's "state of mind," Plaintiff includes no record citations in her brief that would support an inference that Defendant's alleged violation of § 1681e(b) was willful or reckless—she merely rehashes her allegations that Defendant violated § 1681e(b) and contends that willfulness is a jury question. (*See* Pl.'s Mem. 20–23.) In other words, she has not pointed to evidence from which a jury could conclude that Defendant was more than merely negligent. That is not enough to defeat summary judgment. *See Jones v. First Advantage Background*

*Servs. Corp.*, No. 23-CV-553, 2025 WL 2223638, at *6 (D. Conn. Aug. 5, 2025) (concluding "that there is no support in this record for [the p]laintiff's assertion that [the defendant] acted willfully or recklessly, as opposed to negligently, in failing to carry out any obligation under the FCRA" where the defendant's reports were overall accurate despite the alleged violation); *Young v. Experian Info. Sols., Inc.*, 776 F. Supp. 3d 721, 743–44 (N.D. Ill. 2025) (concluding at summary judgment that "[a]ny violation of the FCRA on [the defendant CRA's] part was negligent and not willful"). And that is especially so considering undisputed evidence in the record that, when its attention was drawn to HVFCU's balloon payment reports, Defendant verified whether they were accurate (for those few reports calling attention to the balloon payments' accuracy). (*See* Pl.'s Counter-56.1 ¶¶ 94–95 (admitting that "[o]f those [72] disputes, only two (2) consumers, by two (2) disputes, disputed the accuracy of balloon payment information furnished by Hudson Valley," and that "[i]n both cases, Hudson Valley verified" their accuracy to Defendant).)

Second, the Court finds Defendant is entitled to the *Safeco* defense. The rather open-ended statutory text here requires only "reasonable procedures" to ensure the accuracy of credit reports, 15 U.S.C. § 1681e(b). Defendant argues its "objectively reasonable," *Shimon*, 994 F.3d at 94, reading of the statute was that "reasonable procedures" would have permitted reliance on a third-party furnisher with the sorts of vetting and guardrails that Defendant imposed, and would not have required individual scrutiny of debt instruments submitted by third-party furnishers that had undergone that credentialing process, (*see* Def.'s Mem. 20). As explained above, the Court agrees with Plaintiff that she has established a genuine dispute as to whether reasonable procedures required more than this for reports of balloon payments from auto leases, and in the context of HVFCU's furnished data. But the Court cannot conclude—considering the broad

statutory language, *see* 15 U.S.C. § 1681e(b), and Second Circuit caselaw that, depending on the circumstances, a CRA "d[oes] not breach its duties under FCRA by relying on the updates it received from [third-party furnishers reaffirming an inaccurate debt]," *Podell*, 112 F.3d at 104—that Defendant's reading is objectively unreasonable or evinces a reckless disregard of FCRA. *See Shimon*, 994 F.3d at 93 (affirming summary judgment on willfulness claims where CRA proposed reading of the statute encompassing its conduct that was not objectively unreasonable).

Accordingly, "[g]iven th[e] dearth of guidance and the less-than-pellucid statutory text, [Defendant's] reading [of the statute] was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability," even though, as explained above, the Court "disagree[s] with [Defendant's] analysis." *Safeco*, 551 U.S. at 69–70; *see also Shimon*, 994 F.3d at 94 (explaining that the CRA "d[oes] not need to prove that it actually adopted the interpretations that [the court] conclude[d] were 'not objectively unreasonable' to avoid liability" because *Safeco* concerns "*objective* reasonableness, not anyone's state of mind"). The Court therefore grants summary judgment to Defendant on Plaintiff's claims of willful violations of § 1681e(b) under § 1681n(a).

## III. Conclusion

For the foregoing reasons, the Court denies Defendant's Motion for Summary Judgment in part and grants it in part. Because the Court references materials filed under seal, the Clerk of Court is respectfully directed to file this Opinion and Order under seal, viewable only to the Court and to the Parties. Within 30 days, the Parties shall file proposed redactions to this Opinion and Order. The Court will hold a status conference on October 26, 2026, at 10:30 a.m. Defendant shall respond to Plaintiff's August 4th, 2026 letter in no more than 14 days. At the conference, the Parties should be prepared to discuss the issues raised in Plaintiff's letter. The Clerk of Court is respectfully directed to terminate the pending motion at Dkt. No. 145.

SO ORDERED.

Dated: September 30, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge